(No. 40411.—

*In re* ROBERT F. URBASEK, Respondent.—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* ROBERT F. URBASEK, Appellant.)

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

KLUCZYNSKI and WARD, JJ., took no part.

EDWARD F. VYZRAL and HERMAN R. TAVINS, both of Chicago, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and WILLIAM J. NELLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The First District Appellate Court (76 Ill. App. 2d 375) affirmed the judgment of the juvenile division of the circuit court of Cook County finding from a preponderance of the evidence that Robert F. Urbasek (herein referred to as respondent) was a juvenile delinquent. We allowed a petition for leave to appeal in order that we might consider

whether continued use of the standard of proof (preponderance of the evidence) heretofore prevailing in delinquency proceedings was permissible in light of the opinion of the Supreme Court in *In re Application of Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, or whether the State must now prove a charge of delinquency beyond a reasonable doubt where the acts constituting the alleged delinquent conduct would amount to a crime if charged against an adult.

The delinquency petition charged the respondent, an eleven-year-old boy, with violating a State law. Violation of a State law by a juvenile was a basis for a declaration of delinquency in Illinois at the time this action was commenced in 1965 (Ill. Rev. Stat. 1965, chap. 23, par. 2001), and continues to be under our present Juvenile Court Act (Ill. Rev. Stat. 1965, chap. 37, par. 702—2). The evidence introduced at the hearing revealed that the respondent was charged with murdering an eleven-year-old girl with whom he had been playing some four hours prior to the discovery of her body. The appellate court opinion includes the following description:

"On August 26, 1965, between 7:00 and 8:00 P.M., the body of Karen Mitchell was found in the locked Urbasek garage. Karen had been missing since about 3:00 P.M., and her mother had been searching for her. She had questioned Robert several times and finally insisted that Robert and his older sister allow her to look for Karen in their garage. The garage was opened, and the girl's body, with seven stab wounds, was found in the crawl space at the far end of the garage. A 6-inch knife was found near her head, and on her left wrist was 'a strapping with perforated holes and a combination lock and a piece of twine like substance around her neck.' The immediate cause of death was stab wounds of the lungs and liver." For our purposes an extensive consideration of the evidence presented in the trial

court is unnecessary because it is clear that the judge based his findings of fact upon the preponderance of the evidence standard.

While our present statutory reference to a preponderance of the evidence standard (Ill. Rev. Stat. 1965, chap. 37, pars. 701—4 and 704—6) was not in effect at the time this cause was heard, there is no doubt that such standard prevailed in the majority of jurisdictions. (*People* v. *Lewis,* 260 N.Y. 171, 183 N.E. 353, 355; *State ex rel. Berry* v. *Superior Court,* 139 Wash. 1, 245 Pac. 409, 410; *Robinson* v. *State* (Tex. Civ. App.), 204 S.W.2d 981, 982; *In re Castro,* 243 Cal. App. 2d 402, 52 Cal. Rptr. 469, 472; *In re Bigesby* (D.C. App. Ct.), 202 A.2d 785, 786; *United States* v. *Borders* (N.D. Ala.), 154 F. Supp. 214, 216; *In re Ronny* (Fam. Ct.), 242 N.Y.S.2d 844, 848; see, however, *In re Johnson,* 30 Ill. App. 2d 439.) That standard was adopted in delinquency cases because such proceedings were almost unanimously regarded as "civil" actions (see appendix to *Pee* v. *United States* (D.C. cir.), 274 F.2d 556, 561-2, listing 42 States that have so held).

Since the first juvenile court statute adopted in 1899 in Illinois, every State in the Union has adopted a similar system. All of these enactments were predicated on the theory that the child whose anti-social behavior caused him to be brought into court benefited from informal treatment rather than formal procedure and punishment. The praiseworthy aspirations upon which the juvenile statutes were based contemplated not only insulating adjudged delinquents from adults convicted of crimes, but also omitting from delinquency hearings many of the procedural safeguards that attend criminal trials. The reasoning advanced for conducting juvenile court proceedings according to the rules developed in civil actions was that delinquency hearings "are not in the nature of a criminal trial but constitute merely a civil inquiry or action looking to the treatment, reformation and rehabilitation of the minor child. Their

purpose is not penal but protective,—aimed to check juvenile delinquency and to throw around a child, just starting, perhaps on an evil course and deprived of proper parental care, the strong arm of the State acting as *parens patriae*. The State is not seeking to punish an offender but to salvage a boy who may be in danger of becoming one, and to safeguard his adolescent life. Even though the child's delinquency may result from the commission of a criminal act the State extends to such a child the same care and training as to one merely neglected, destitute or physically handicapped. No suggestion or taint of criminality attaches to any finding of delinquency by a Juvenile Court." *In re Holmes,* 379 Pa. 599, 109 A.2d 523, 525.

This philosophy generally prevailed, with a few exceptions, for more than half a century until the United States Supreme Court noted in *Kent* v. *United States,* 383 U.S. 541, 555-56, 16 L. Ed. 2d 84, 94, 86 S. Ct. 1045, 1054: "While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults. There is much evidence that some juvenile courts  *  *  *  lack the personnel, facilities and techniques to perform adequately as representatives of the State in a *parens patriae* capacity, at least with respect to children charged with law violation. There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children."

*Kent* was limited in its application to the District of Columbia, but this limitation was effectively removed by the court's admonition in *In re Application of Gault,* 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, that neither the

fourteenth amendment nor the Bill of Rights is for adults only. In *Gault* the court held that the essentials of due process required that a juvenile court adjudication of delinquency include adequate advance notice of the charges, the right to counsel, the privilege against self-incrimination and the right to confrontation and cross-examination of witnesses. While these requirements are met by our statute, and the respondent in the case before us was denied none of these rights, it would seem that the reasons which caused the Supreme Court to import the constitutional requirements of an adversary criminal trial into delinquency hearings logically require that a finding of delinquency for misconduct, which would be criminal if charged against an adult, is valid only when the acts of delinquency are proved beyond a reasonable doubt to have been committed by the juvenile charged.

We note that this interpretation of the *Gault* decision is in direct conflict with the ruling of the District of Columbia Court of Appeals in *In re Wylie*, (D.C. App. Ct.) 231 A.2d 81, which refused to depart from its earlier decision in *In re Bigesby*, 202 A.2d 785, where it held that the injection of the criminal law concept of guilty beyond a reasonable doubt into "civil" delinquency proceedings would be "both unnecessary and improper." (202 A.2d at 786.) We believe, however, that the reasoning of that court does not comport with the recurrent theme of the majority in *Gault* which equated many aspects of a delinquency adjudication with a criminal conviction. (387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. at 1441-42.) A minor found guilty of the requisite misconduct to be adjudged a delinquent "is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence— and of limited practical meaning—that the institution to which he is committed is called an Industrial School. The fact of the matter is that, however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is

an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with white-washed walls, regimented routine and institutional laws * * *.' Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians [and] state employees * * *." (387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. at 1443.) When we eschew legal fictions and adopt a realistic view of the consequences that attach to a determination of delinquency and a commitment to a juvenile detention home, "juvenile quarters" in a jail or a State institution as described above, we can neither truthfully nor fairly say that such an institution is devoid of penal characteristics. Though the purpose of industrial training schools for boys, such as that at St. Charles in Illinois, is to rehabilitate and train youths whose misconduct has brought them to these institutions, the incarcerated juveniles' liberty of action is restrained just as effectively as that of the adult inmates serving terms in State and Federal prisons. The modern concepts of penology which guide the administrators of today's prisons also place a great emphasis on training, education and rehabilitation which were once the unique characteristics of the juvenile system that, in theory, at least, justified the application of lesser procedural safeguards for delinquency hearings. Now, however, while improbable, a minor may conceivably be confined for a longer period of time than the period of imprisonment imposed upon an adult who is found guilty of the same criminal conduct. See *In re Application of Gault,* 87 S. Ct. 1428.

We need not be reminded that the *Gault* decision did not pass upon the precise question of the quantum of proof that must be shown to validate a finding of delinquency. We believe, however, that the language of that opinion exhibits a spirit that transcends the specific issues there involved, and that, in view thereof, it would not be consonant with due process or equal protection to grant allegedly de-

linquent juveniles the same procedural rights that protect adults charged with crimes, while depriving these rights of their full efficacy by allowing a finding of delinquency upon a lesser standard of proof than that required to sustain a criminal conviction. Since the same or even greater curtailment of freedom may attach to a finding of delinquency than results from a criminal conviction, we cannot say that it is constitutionally permissible to deprive the minor of the benefit of the standard of proof distilled by centuries of experience as a safeguard for adults.

We realize that our adoption of what has heretofore been the minority view point as to the quantum of evidence required in delinquency hearings (see *Jones* v. *Commonwealth,* 185 Va. 335, 38 S.E.2d 444, 447; *In re Madik* (S. Ct.), 251 N.Y.S. 765, 767; *In re Rich* (Dom. Rel.), 86 N.Y.S.2d 308, 311; *People* v. *Anonymous,* A, B, C, & D (County Ct.), 279 N.Y.S.2d 540, 543), requires not only the reversal of the decision in this case, but also voids the provisions of the current Juvenile Court Act which incorporate the preponderance standard for delinquency proceedings (Ill. Rev. Stat. 1965, chap. 37, pars. 701—4 and 704—6.) Our ruling today, however, modifies, in only a single respect, the Illinois statutory scheme that could well act as a model among the States for protecting the rights of juvenile court defendants. (See Ill. Rev. Stat. 1965, chap. 37, par. 701—20.) The unique benefits that are derived from the special dispositional processes under the Act will not be diluted by the changes made here at the adjudicatory stage. Moreover, we do not suggest that any infirmity exists in the provisions of the Act relating to dependent and neglected minors because the circumstances of such youths differ substantially from those of delinquent minors whose own culpable acts cause them to be deprived of their parental home and natural liberty in appropriate cases. Dependency and neglect cases are ordinarily instituted primarily because of the unwillingness or inability

of parents or relatives to discharge their parental duties rather than because of the child's misconduct. (Ill. Rev. Stat. 1965, chap. 37, pars. 702—4 and 702—5.) While he may be removed from his parental home, the minor's liberty may not be infringed upon by his commitment to an institution designed solely for the care of delinquent children (Ill. Rev. Stat. 1965, chap. 37, par. 705—7(1) (e)), and he is not punished or regarded as a criminal by society which is genuinely seeking to provide him with a proper home. Because of these differences we see no compelling reason for requiring more than a preponderance of the evidence standard of proof in cases of dependency or neglect which may appropriately be labelled "civil" proceedings both in the legal and lay sense of the word. Nor do we believe our adherence to the "clear preponderance" standard in prosecutions for violations of municipal ordinances (see *City of Chicago* v. *Joyce,* 38 Ill.2d 368, decided last term) is inconsistent with application of the "reasonable doubt" standard in this case. Quite substantial differences exist between the usual penalty for ordinance violations (a fine) and the possible loss of liberty for years which may result from an adjudication of delinquency.

Our decision that the application of the preponderance standard was reversible error still leaves a question as to proper disposition of this case. If it may fairly be said that the trial judge actually found the evidence insufficient to establish respondent's delinquency beyond a reasonable doubt, we should reverse without remandment. If the trial court simply measured the evidence by the wrong standard of proof, the cause should be remanded for a new trial in which the correct standard would be applied. At the conclusion of the hearing the trial court stated: "Well, gentlemen, on the evidence, the court rules that the state has *more* than met its burden of establishing a preponderance of evidence and enters a finding of delinquency." (Emphasis added.) In post-trial arguments the respondent's attorney

argued that the judge's decision should have been based on the reasonable doubt standard. In response to this contention, and following an off-the-record discussion between the court and counsel, the judge said: "I was and am *convinced* that the youngster committed the act. I believe that the State met their burden of establishing the preponderance of evidence. I don't know that they met, if it is a requirement of proof beyond a reasonable doubt. I· *don't think* that was met." (Emphasis added.) In our opinion it cannot fairly be said that these equivocal statements constitute a finding that the reasonable doubt standard was not met. Accordingly, a new trial will be ordered.

We believe it unnecessary to rule at this time on the contention that the redirect testimony of respondent's expert witness was unduly restricted since it is unlikely that the question will arise in a retrial.

The judgment of the Appellate Court is reversed and the cause remanded to the juvenile division of the circuit court of Cook County for a new trial.

*Reversed and remanded.*

KLUCZYNSKI and WARD, JJ., took no part in the consideration or decision of this case.