[Civ. No. 9183. Fourth Dist., Div. One. Feb. 13, 1969.]

In re K. D. K., a Person Coming Under the Juvenile Court Law.

MARGARET GRIER, as Chief Probation Officer, etc., Plaintiff and Respondent, v. K.D.K., Defendant and Appellant.

---

William F. Byrnes for Defendant and Appellant.

Cecil Hicks, District Attorney, and Michael R. Capizzi, Deputy District Attorney, for Plaintiff and Respondent.

WHELAN, J.—K.D.K., born May 18, 1950, a ward of the juvenile court, appeals from an order of the juvenile court dated January 31, 1968, which placed him on probation and released him to the custody of his parents. It ordered also that he pay a fine of $50, costs of probation of $10 per month, and that his license to operate a vehicle be suspended until the further order of the court.

The jurisdictional finding upon which the order appealed from is based was made on January 17, 1968, which found true the allegations of the petition as follows: "He did swerve toward and honk at Marilyn Curtis, striking her with his vehicle, and knocking her down to the pavement level on the dirt shoulder and in doing so did violate section 23104 of the Vehicle Code of California."

### THE MINOR'S CONTENTIONS ON APPEAL

The minor's contentions on appeal are the following:. "Where a Finding of Delinquency Is Based Upon the Commission of a Single Criminal Act, Due Process Compels the Granting to a Person Accused in Juvenile Court the Protection of the Same Burden of Proof as Must Be Sustained Against an Adult Charged With the Same Offense.

". . . . . . . . . . . .

"The Application of the Preponderance of the Evidence Test in the Case at Bar Violated Appellant's Right to Equal

Protection of the Laws in That, in Practical Effect, It Unreasonably Makes Criminal for Juvenile an Act Not Criminal for an Adult.''

Since section 701, Welfare and Institutions Code, declares that in juvenile court proceedings a contested issue of jurisdiction shall be decided by a ''preponderance of the evidence, legally admissible in the trial of criminal cases,'' where the petition is under section 602, Welfare and Institutions Code, there is implied, but not stated explicitly, that such provision is unconstitutional insofar as it does not require that the proof be beyond a reasonable doubt.

The contention now made was disposed of by *In re Johnson* (1964) 227 Cal.App.2d 37, 39-40 [38 Cal.Rptr. 405], which held that the application of the preponderance of evidence rule in a juvenile court finding of the truth of a petition filed under section 602, Welfare and Institutions Code, is not a denial of due process or of the equal protection of the laws.

It is only the intervening decision of the Supreme Court of the United States in *Application of Gault*, 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], that requires a re-examination of the question.[1]

In *Application of Gault, supra*, 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], the Supreme Court found deficient in many respects the procedures by which under Arizona law Gault was placed in an industrial home for boys where he might have been kept until his majority, a matter of about six years. Those deficiencies were inadequate notice of hearing, both as to the time permitted for preparation and as to the statement of the alleged misconduct; failure to furnish counsel; use of admissions made by Gault without his having been advised of his rights to counsel and to remain silent; and failure to produce the witness as to the misconduct, whose statement as made to the police was presented at the hearing.

The Supreme Court held those defects to be denials of con-

[1]The court, in *In re M.G.S.*, 267 Cal.App.2d 329, 338 [72 Cal.Rptr. 808], mentions the question but had no reason to pass upon it.

The opinion in *In re J.F.* (Jan. 15, 1969) 268 Cal.App.2d 761 [74 Cal.Rptr. 464], held the preponderance of the evidence rule sufficient in a hearing under sections 1800-1801, Welfare and Institutions Code, but said, at page 831: ''It does not necessarily follow, however, that even if *Gault*, by implication, demands proof beyond a reasonable doubt at an adjudicatory hearing pursuant to section 602 of the Welfare and Institutions Code, where the question is whether the minor has violated a specific law [citation], *Gault* requires the same burden of proof at section 1800 proceedings. Conversely, this decision does not represent a holding that at the hearing which may result in the original commitment to the Youth Authority, the higher burden of proof is not required.''

stitutional rights under the Fifth, Sixth and Fourteenth Amendments to the federal Constitution.

The court, however, disavowed any intention to deal a fatal blow to the juvenile court system. The majority stated: "While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of the kindly juvenile judge be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child.

"Ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case." (*Application of Gault*, 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428, 1443].) Elsewhere, the court stated:

"Under traditional notions, one would assume that in a case like that of Gerald Gault, where the juvenile appears to have a home, a working mother and father, and an older brother, the Juvenile Judge would have made a careful inquiry and judgment as to the possibility that the boy could be disciplined and dealt with at home, despite his previous transgressions." (*Application of Gault*, 387 U.S. 1 [18 L.Ed. 2d 527, 87 S.Ct. 1428, 1444].)

Although there is about the *Gault* decision a certain *ad hoc* character, perhaps inevitable in a review of a habeas corpus proceeding, it would not be correct to deduce from *Gault* an indication that the constitutional sufficiency of the juvenile court proceeding is to be measured by the disposition made by the juvenile court judge.

Since the *Gault* decision, some courts have found it to imply inexorably that proof in a delinquency hearing in a juvenile court must be beyond a reasonable doubt to sustain an affirmative finding. (See *In re Urbasek*, 38 Ill.2d 535 [232 N.E.2d 716]; *Santana* v. *State* (Texas Civ. App.), 431 S.W.2d 558; *United States* v. *Costanzo* (4th Cir. 1968) 395 F.2d 441.)[2]

It is worth noting that in the *Urbasek* decision, the Illinois court referred to its own earlier decision in which it had held that the clear preponderance of evidence rule might constitu-

---

[2]The Virginia Supreme Court adopted the proof beyond a reasonable doubt standard in 1946 (*Jones* v. *Commonwealth*, 185 Va. 335 [38 S.E.2d 444]).

tionally be applied in prosecutions for violations of city ordinances (*City of Chicago* v. *Joyce*, 38 Ill.2d 368 [232 N.E.2d 289]), saying: "Quite substantial differences exist between the usual penalty for ordinance violations (a fine) and the possible loss of liberty for years which may result from an adjudication of delinquency." (*In re Urbasek*, 38 Ill.2d 535 [232 N.E.2d 716, 720].)

One other court, having considered *Gault*, did not find in that decision any compulsion to abandon an earlier holding that the standard of proof by a preponderance meets all constitutional requirements. (*In re Wylie* [D.C. Mun.App.] 231 A.2d 81, 84.)[3]

*Gault* has also been held to compel a right to trial by jury in such a hearing. (*In re Rindell*, (R.I. Fam. Ct.) 36 U.S. L. Week 2468; *Peyton* v. *Nord*, 78 N.M. 717 [437 P.2d 716]; *Nieves* v. *United States* (S.D. N.Y. 1968) 280 F.Supp. 994.)

In the case last cited, the three-man court held unconstitutional 18 U.S.C.A. 5033, to the extent that statute deems consent to juvenile court proceedings a waiver of jury trial.

Other courts have not found in *Gault* any such requirement. (*Commonwealth* v. *Johnson*, 211 Pa. Super. 62 [234 A.2d 9].)[4]

*Gault*, and the 1966 decision, *Kent* v. *United States*, 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], have also engendered a spawn of law review articles covering specific matters ruled upon in those cases; and symposia covering the whole field of juvenile court theory and practice.[5]

---

[3] The factual issues in *Wylie* were tried by a jury.

[4] The court in *Johnson* reversed because the juvenile's right against self-incrimination had been violated.

[5] In 19 Hastings Law Journal 29, *Kent* v. *United States*, and *In re Gault: Two Decisions in Search of a Theory* (1967) a member of the San Francisco Bar finds a basis for the juvenile court system in what the writer terms the "qualitative aspects of incarceration" of the system as contrasted with penal confinement.

As a part of the same symposium, another writer, in 79 Hastings Law Journal 47, in *Juvenile Justice in California: A Re-evaluation*, analyzes the defects of existing California law, and suggests the desirability of the right to trial by jury and establishment of proof beyond a reasonable doubt as the standard.

A team of writers in the Chicago Bar Record, in *From Gault to Urbasek*, 49 Chicago Bar Record 162, opines that the maintenance of the existing juvenile court system, while deciding contested jurisdictional allegations with all the procedural rules of a criminal trial, but without a jury, is a desirable end well worth the cost.

A writer in 72 Dickinson Law Review 547, expresses his opinion that "the reasonable doubt test is the best standard." However, he does not find in *Gault* any implication that the Supreme Court of the United States was concerned with the standard of proof issue; and that "as long as

In considering the possible consequences of the *Gault* holding, the decision of the U.S. Supreme Court in *In re Whittington*, 391 U.S. 341 [20 L.Ed.2d 625, 88 S.Ct. 1507], is of interest. The Ohio Court of Appeal had held that a finding of delinquency was sufficiently established by a preponderance of the evidence. (*In re Whittington*, 13 Ohio App. 2d 11 [233 N.E.2d 333, 341].) The Ohio Supreme Court dismissed a further appeal. The Supreme Court of the United States granted certiorari on a petition that alleged the juvenile: ". . . had been determined to be a delinquent on the basis of an unconstitutionally low standard of proof, and that he had been denied his constitutional rights to trial by jury, to an impartial tribunal, and to bail pending disposition of the case against him; he also contended that his privilege against self-incrimination had been violated by the admission into evidence against him of statements made in response to questioning from police officers." (*In re Whittington*, 391 U.S. 341 [20 L.Ed.2d 625, 88 S.Ct. 1507].)

Presented with the opportunity to declare itself as to the standard of proof, and of right to trial by jury, the court merely said, at page 391 U.S. 341, 344 [20 L.Ed.2d 625, 629, 88 S.Ct. 1507, 1508]: "Because the Ohio courts have not had the opportunity to assess the impact of that decision on petitioner's claims, we deem it appropriate to vacate the judgment of the Ohio Court of Appeals and remand the case for reconsideration in light of *Gault*."

It appeared that Whittington had been transferred to the criminal court for trial on a criminal charge of murder. In that respect the juvenile court hearing was argued by Ohio to be only a hearing to determine whether there was probable cause to commit for trial on the criminal charge. As to that aspect, the Supreme Court of the United States observed: "Petitioner, on the other hand, asserts that his adjudication as a delinquent is final for purposes of appellate review and that substantial consequences of that decision continue despite the supervening transfer of jurisdiction over petitioner to the adult criminal courts. The resolution of this dispute is crucial to many of the issues presented by petitioner, since, for example, in ordinary probable cause hearings involving adults

some standard is used by which the judge may determine the juvenile's guilt, the hearing is a fair one"; that the failure of the high court to give forth dicta on the question indicates it was satisfied with the preponderance of evidence test.

See also 5 Willamette Law Journal 149; 79 Harvard Law Review 775.

there is no right to either trial by jury or a finding of guilt beyond a reasonable doubt.'' (391 U.S. 341, 343 [20 L.Ed.2d 625, 628, 88 S.Ct. 1507, p. 1508].)

It is patent that the violation of the Fifth Amendment right by admitting into evidence in a probable cause hearing statements obtained without the *Miranda* warning was a sufficient reason to vacate the *Whittington* judgment. A violation of such rights was one of the specific grounds of the *Gault* decision; and it seems plain from the decision of the Ohio Court of Appeals that statements obtained from the juvenile made up a large part of the evidence against Whittington.

Thus the Supreme Court of the United States did not avail itself of that opportunity to pass upon the question of the standard of proof notwithstanding the divergence of opinion on the subject that called for settlement.

CONSTITUTIONAL DUE PROCESS DOES NOT REQUIRE PROOF BEYOND ALL REASONABLE DOUBT IN A JUVENILE COURT PROCEEDING UNDER SECTION 602, WELFARE AND INSTITUTIONS CODE.

The *Gault* opinion contrasts the Arizona Juvenile Court Law and its operation with those of other states whose juvenile court laws, in their structure and application, safeguard the constitutional guarantees held to be violated in Arizona.

In California, the statutes now under attack already were free of the specific defects found constitutionally fatal in *Gault*. The 1961 and subsequent amendments to the Welfare and Institutions Code, in proceedings involving conduct allegedly violative of a penal statute, assure the right to counsel and the exclusion of evidence not legally admissible in a criminal trial. That latter provision of section 701, Welfare and Institutions Code, taken in conjunction with the decisions in *Miranda* and *Dorado,* affords adequate safeguards against the kind of evidence condemned in *Gault* (*In re Buros,* 249 Cal.App.2d 55, 57 [57 Cal.Rptr. 124]; see also *In re Butterfield,* 253 Cal.App.2d 794 [61 Cal.Rptr. 874]). A sufficient statement of the alleged violation and adequate notice of hearing are also provided for.

It is only with the juvenile court law of California now in force that we are concerned.

We are of opinion that *Gault* does not hold more than that the juvenile is entitled to the full protection of specific constitutional guarantees, and that the hearing must be fairly conducted within a prescribed framework.

We are not prepared to depart from the holdings of the

California courts that proceedings in the juvenile court are, indeed, of a civil nature.

We are in accord with the view that legislation that places those subject to the jurisdiction of the juvenile court in a different classification from those not so subject, with regard to conduct of the same general character, is constitutional. A claim to the contrary by an adult convicted of a felony might seem more to be expected than from a juvenile beneficiary of the Juvenile Court Act. Juveniles over whom the juvenile court has refused to take jurisdiction have sometimes claimed that such refusal unconstitutionally denied them the benefits of the juvenile court procedure. (See *People v. Dotson,* 46 Cal.2d 891, 895 [299 P.2d 875].)

The possible consequences to the adult are many: loss of liberty, association with criminals of many sorts, loss of civil rights, liability to impeachment as a witness in any future trial, a first milestone on the road to penalties of increasing severity for any future offense, and public obloquy.

Legislative classification that affords a juvenile opportunity to escape such possible consequences of misconduct should not, if such classification serves a useful social purpose, be overthrown because the juvenile may be found to come within the class by the application of the rule common to all civil proceedings that the affirmative of an issue be proved by a preponderance of the evidence rather than beyond all reasonable doubt.

The fact that a finding of jurisdiction in a hearing under section 602, Welfare and Institutions Code, may result in a deprivation of liberty to the juvenile does not alone change the proceeding from a civil to a criminal one. (See *People* v. *Moore,* 69 Cal.2d 674, 684 [72 Cal.Rptr. 800, 446 P.2d 800], dealing with narcotic addiction proceedings.)

Proof by a preponderance of the evidence may be less satisfactory where the question is whether it was the juvenile before the court who did a certain act that unquestionably was done by someone, and where the evidence, apart from inadmissible statements of the juvenile, is wholly circumstantial. *Gault, Urbasek* and *Whittington* all dealt with such a situation.

However, the constitutionality of the statute in question should not depend upon the nature of the factual question to which the evidence is directed.

"A degree of order and regularity" and "the adversary

654

system,'' mentioned in the *Gault* decision, are not found exclusively in criminal trials.

In a civil trial, moreover, the juvenile has the benefit of the presumption of innocence. (Former Code Civ. Proc. § 1963, subd. 1; *Cooper* v. *Spring Valley Water Co.*, 16 Cal.App. 17, 23 [116 P. 298]; *Hearne* v. *De Young*, 119 Cal. 670, 681 [52 P. 150, 499]; *Gong* v. *Fireman's Ins. Co.*, 202 Cal.App.2d 686, 691 [21 Cal.Rptr. 110].)

Section 1963 subdivision 1, Code of Civil Procedure, has been replaced by section 520, Evidence Code, which states: ''The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue.''

It is one of the presumptions affecting the burden of proof. ''The effect of a presumption affecting the burden of proof is to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact.'' (Evid. Code, § 606.)[6]

The burden in civil cases which the presumption of inno-

---

[6]The rules declared by sections 501, 520 and 606, Evidence Code, recognize as true Wigmore's statement that the presumption of innocence:

''. . . has been the subject of two special fallacies, namely, 1, that it is a genuine *addition to the number* of presumptions, and, 2, that it is *per se* evidence.

''1. As to the first of these fallacies, it is to be noted that the 'presumption of innocence' is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, *i.e.*, the rule that it is for the prosecution to adduce evidence (*ante*, § 2487), and to produce persuasion beyond a reasonable doubt (*ante*, § 2497). As to this latter part, the measure of persuasion, the 'presumption' says nothing. As to the former part, the 'presumption' implies what the other rule says, namely, that the accused (like every other person on whom the burden of proof does not lie) may remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion; *i.e.*, to say in this case, as in any other, that the opponent of a claim or charge is presumed not to be guilty is to say in another form that the proponent of the claim or charge must evidence it.'' (9 Wigmore on Evidence, § 2511, p. 407.)

Against the proof of guilt that satisfies beyond a reasonable doubt, the presumption of innocence does not weigh. In that sense it is not evidence; it is not an ''instrument of proof.'' (*People* v. *Moran*, 144 Cal. 48, 59 [77 P. 777].)

In a situation in which the testimony of certain witnesses which, if accepted, convinces as to guilt beyond a reasonable doubt, the trier of fact must decide whether those witnesses are worthy of belief rather than other witnesses whose testimony is to the contrary.

In making that determination, the presumption of innocence should be considered in favor of accepting the testimony that accords with the presumption.

But if the trier of fact is impelled reasonably and conscientiously to believe those witnesses whose testimony leaves no reasonable doubt as to guilt, the presumption cannot be said to be evidence that weighs against the effect of that credible and credited testimony.

cence places on one of the parties is met when such party produces evidence that by a preponderance persuades to the contrary of the presumption. (*Cooper* v. *Spring Valley Water Co., supra,* 16 Cal.App. 17, 22.)

The philosophic basis of the juvenile court system has been exhaustively treated in earlier decisions of our upper courts and calls for no restatement here. It can hardly suffer further attrition and maintain its essential character.[7]

If the culmination of the process of attrition is the requirement of a trial in accordance with every rule of criminal procedure, it would be logical for the Legislature to provide that juveniles of a certain age who contest the truth of section 602 petitions be tried in the courts of appropriate criminal jurisdiction; and only thereafter have the juvenile court determine whether it would assume jurisdiction to control custody. Thus the great majority of such trials would be held in the municipal court.

We deem that when the benefits of the system are weighed in the balance, the rights of the juvenile are sufficiently protected by the existing rule as to the preponderance of evidence.

The order is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

---

[7]See article by Judge Robert Gardner of the Superior Court of Orange County in 40 California State Bar Journal (1965).