THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN FLEMING, Defendant-Appellant.

First District (2nd Division)   No. 83—2918

Opinion filed June 28, 1985.

James J. Doherty, Public Defender, of Chicago (Clyde Lemons, Jr., Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Karyn Stratton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant Kevin Fleming was a minor who was charged as an adult with a nine-count indictment as follows: two counts of murder, attempted murder, armed violence based on attempted murder, two counts of aggravated battery, two counts of armed violence based on aggravated battery, and armed violence. Before trial, defendant moved to suppress an out-of-court statement by alleging that he did not knowingly or intelligently waive his right to have an attorney present and that the statement was taken in violation of his sixth amendment right to counsel. After the suppression hearing, the trial court denied the

motion. Defendant was subsequently convicted of voluntary manslaughter and armed violence based on aggravated battery with intent to do great bodily harm. He was sentenced to 14 years for each conviction, the sentences to run concurrently.

On appeal, defendant argues three points, that: (1) the trial court erred in denying his motion to suppress because his out-of-court statement was taken in violation of his sixth amendment right to counsel; (2) under the totality of the circumstances, he never knowingly or intelligently waived his right to have counsel present during interrogation; and (3) his extended term sentence for voluntary manslaughter was improper because he was under the age of 17 at the time of the alleged offense.

At the time of the alleged crime, defendant was 15 years old. He lived with his brother Arnold and his grandmother, Mrs. Ida Hammond, who was his legal guardian. Defendant's mother, with whom he had a good relationship, lived next door. Defendant had no prior juvenile history. He had attended grammar school in an educably mentally handicapped class.

In the early morning of August 18, 1981, defendant was involved in a shooting that killed Fred Rogers and wounded his companion, Richard Brookins. The shooting may have been part of a street gang initiation. The next day, defendant left Chicago and went to Connecticut.

Detective Frank Laverty of the Chicago police department investigated the shooting. During his investigation Laverty questioned Richard Blackman, who was with defendant at the time of the incident and who implicated him in the crime. Blackman later became a prosecution witness. About three weeks later, on September 11, 1981, Laverty filed a petition for an adjudication of wardship under the Juvenile Court Act. (Ill. Rev. Stat. 1981, ch. 37, par. 704—1.) The petition charged that defendant was delinquent in that he had allegedly committed the offense of murder and aggravated battery. An arrest warrant issued on the same day.

On September 18, Laverty travelled to Connecticut in an effort to extradite the defendant. Defendant, who was represented by a Connecticut public defender, successfully fought extradition, left Connecticut, and went to Georgia, where he was later arrested in connection with the Chicago shooting.

On or about September 11, defendant's mother retained attorney James Montgomery to represent her son. Detective Laverty admitted under oath that he knew defendant had an attorney before he went to Connecticut and before he and Detective Lawrence Nitsche went to

Georgia to apprehend and return defendant to Chicago.

The detectives testified that, upon their arrival in Georgia, they informed defendant of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, that: defendant had the right to remain silent; any statement could be used as evidence against him; he had the right to an attorney; and if he could not afford one, an attorney would be appointed. Defendant was also informed that he could be tried as an adult. He testified that after he was given his warnings, he said, "I told them that I wanted to talk to my lawyer, first." The questioning stopped, and the detectives brought defendant back to Chicago, where he was taken immediately to Area 2 Police Headquarters.

Detectives Laverty and Nitsche, along with Youth Officer Robert Purcell, did not notify attorney Montgomery that defendant was in custody, nor did they inform defendant that he had an attorney. Instead, they again gave defendant his *Miranda* rights and began to question him a second time. Defendant denies that he was read his rights, and he testified that he was questioned for over two hours. Defendant did not make any admission during this interrogation. About 1:30 p.m., Assistant State's Attorney Kathleen McGury arrived to question the defendant.

She testified that she also read defendant his *Miranda* rights. Defendant denied that he had done the shooting, and after about 15 minutes, McGury left.

While McGury was questioning defendant, Detective Nitsche called Mrs. Hammond, defendant's grandmother, and told her that defendant was in custody. Mrs. Hammond arrived soon after, and she and defendant had a conversation. The detectives remained in the same room, and they claim that during this conversation they overheard defendant tell his grandmother that he had done the shooting. Both defendant and Mrs. Hammond, however, deny that any such statement was made.

At about 3 p.m., Assistant State's Attorney McGury returned. She testified that she again gave defendant his *Miranda* warnings and that defendant stated that he understood those rights. According to McGury, defendant did not request an attorney, and he voluntarily told her that he had done the shooting. Before she could reduce his inculpatory statement to writing, however, McGury received a call from attorney Montgomery, who informed her that he represented the defendant. At that point, all questioning stopped.

It is significant that Assistant State's Attorney McGury's written report to her superior does not indicate that defendant was given his *Miranda* warnings before questioning began. In addition, a supplemen-

tal report written by Officer Purcell, who was also present, corroborates the omission because his report also does not mention that defendant was given his rights before he made his inculpatory statement.

In November 1983, a suppression hearing was held. At the close of the evidence, the court denied the defendant's motion to suppress his out-of-court statement. The court made several findings, that: (1) although defendant had been enrolled in a special education class, he appeared to be bright, alert, and aware of the proceedings; (2) *James Montgomery had been retained prior to defendant's leaving for Connecticut and the police knew that defendant had a lawyer*; (3) defendant had been advised properly of his rights prior to questioning; (4) defendant may not have known that he had a lawyer before he made the inculpatory statement; (5) defendant made the inculpatory statement to his grandmother; and (6) defendant had waived his right to have an attorney present during both interrogations by McGury.

Following a bench trial, the court found defendant guilty of voluntary manslaughter, ruling that there was no premeditation. (Ill. Rev. Stat. 1979, ch. 38, par. 9—2.) The court also found defendant guilty of armed violence based on aggravated battery with intent to do great bodily harm. (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—2, 12—4.) At the sentencing hearing held on November 29, 1983, defendant was sentenced to 14 years' imprisonment for each conviction, the sentences to run concurrently. This appeal followed.

I

■ Defendant argues that his sixth amendment right to counsel[1] was violated because it attached when Detective Laverty filed the State's delinquency petition in juvenile court and an arrest warrant was issued. Initially we note that this right is distinct from the right to have counsel present during interrogation, which is guaranteed under the fifth amendment's protection against self-incrimination. (*People v. Martin* (1984), 102 Ill. 2d 412, 419, 466 N.E.2d 228, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334.) Unlike the fifth amendment's right to counsel, the sixth amendment right to counsel attaches when adversarial judicial proceedings have been initiated.

---

[1]"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." U.S. Const., amend. VI.

(*Kirby v. Illinois* (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881.) The methods initiating adversarial judicial proceedings have been described as "formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882.

To date, neither the United States Supreme Court (see *Edwards v. Arizona* (1981), 451 U.S. 477, 480-82 n.7, 68 L. Ed. 2d 378, 383-84 n.7, 101 S. Ct. 1880, 1883 n.7) nor the Illinois Supreme Court has decided whether this sixth amendment right to counsel automatically attaches upon the filing of a criminal complaint. (*People v. Owens* (1984), 102 Ill. 2d 88, 101, 464 N.E.2d 261.) There is, however, some authority for the proposition that whether adversarial proceedings begin with the filing of a complaint depends upon the degree of prosecutorial involvement. See, *e.g., State v. Johnson* (Iowa 1982), 318 N.W.2d 417, 435, *cert. denied* (1982), 459 U.S. 848, 74 L. Ed. 2d 95, 103 S. Ct. 106 (filing of simple complaint at direction of prosecutor might be the start of adversarial judicial proceedings); *People v. Owens* (1984), 102 Ill. 2d 88, 101, 464 N.E.2d 261.

■ The issue before us, then, is whether the degree of prosecutorial involvement surrounding the filing of the delinquency petition that alleges murder, accompanied by the issuance of an arrest warrant and an immediate attempt at extradition, is the beginning of adversarial proceedings to which the guarantees of the sixth amendment apply. Under the facts in this case, we hold that the defendant's right to counsel was violated. The detectives, in executing the arrest warrant, took the defendant into custody and interrogated him despite the fact that the defendant had requested to see an attorney and that the detectives *knew* that defendant was represented by an attorney.

The petition for an adjudication of wardship was filed by Detective Laverty under section 4—1 of the Juvenile Court Act. (Ill. Rev. Stat. 1981, ch. 37, par. 704—1.) The section provides that any adult person may file a verified complaint that alleges that a minor is delinquent, dependent, or otherwise in need of supervision.[2] Section 1—4 of the

---

[2]The statute reads in pertinent part:

"Sec. 4—1. Petition; Supplemental Petitions. (1) Any adult person, any agency or association by its representatives may file, or the court on its own motion may direct the filing through the State's attorney of a petition in respect of a minor under this Act. The petition and all subsequent court documents shall be entitled 'In the interest of . . ., a minor.'

(2) The petition shall be verified but the statements may be made upon information and belief. It shall allege that the minor is delinquent, otherwise in need of supervision, neglected or dependent, as the case may be, ***."

Act also provides that allegations made in a delinquency petition must be proved beyond a reasonable doubt. Ill. Rev. Stat. 1981, ch. 37, par. 701—4.

The State argues that because any adult can file a petition, the act of filing does not mean that prosecution has begun. Although proceedings under the Juvenile Court Act are not criminal in nature (*People v. Woodruff* (1981), 88 Ill. 2d 10, 430 N.E.2d 1120), "certain due process safeguards normally associated with criminal proceedings have been extended for the protection of juveniles to accord to them fundamental fairness." (*In re Beasley* (1977), 66 Ill. 2d 385, 390, 362 N.E.2d 1024 *cert. denied*, (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734.) For example, the United States Supreme Court has held that a minor's waiver of juvenile court jurisdiction without the assistance of counsel is a violation of a minor's constitutional rights. (*Kent v. United States* (1966), 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045.) A minor has a right to proper notice and a formal presentation of charges. (*In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.) Similarly, in Illinois, our supreme court has held that the State must prove beyond a reasonable doubt an original delinquency petition. *In re Urbasek* (1967), 38 Ill. 2d 535, 232 N.E.2d 716; see generally Scott, *Delinquency and Due Process: A Review of Illinois Law*, 59 Chi.-Kent L. Rev. 123 (1982).

■ In this case, the filing of a petition for an adjudication of wardship can be likened to the filing of a criminal complaint. Recently, we have held that "adversarial judicial proceedings by way of formal charge in felony cases commence after the filing of a felony complaint in the circuit court" (*People v. Curtis* (1985), 132 Ill. App. 3d 241, 247), because "[i]f it were otherwise, the use of the pertinent term 'formal charge' in *Kirby* to designate when adversarial judicial proceedings have been initiated would be meaningless ***." (*People v. Curtis* (1985), 132 Ill. App. 3d 241, 247.) Thus, because adversarial proceedings had begun, the defendant had a right to counsel, and that right was violated when the police failed to inform him that he was represented by counsel before their interrogation began. Moreover, the high degree of prosecutorial involvement—the filing of the petition by a policeman, the issuance of an arrest warrant, the attempt at extradition, the arrest and return of the defendant from Georgia—all point to the fact that the juvenile was a target in a murder investigation. As we noted in *Curtis*, "[p]lainly, after the complaint is filed, the person charged has ceased being merely an accused, and he has, in fact, in every respect become a formal defendant in need of an attorney to protect his interests ***." 132 Ill. App. 3d 241, 247.

The situation is similar here. Although proceedings under the Juvenile Court Act are not criminal, the filing of a delinquency petition is criminal in nature because it requires proof beyond a reasonable doubt. (*In re Urbasek* (1967), 38 Ill. 2d 535, 232 N.E.2d 716.) Similarly, the filing of a delinquency petition is analogous to the filing of a criminal complaint, and we have held that the right to counsel attaches upon the filing of a criminal complaint and the issuance of an arrest warrant. See, *e.g., People v. Boswell* (1985), 132 Ill. App. 3d 52, 58.

In this case, therefore, the right to counsel attached when the delinquency petition was filed and an arrest warrant issued because it was at that point that adversarial criminal proceedings began.

In sum, because of the high degree of prosecutorial involvement and because the defendant's right to an attorney attached when the delinquency petition was filed, the State's failure to inform the defendant that he was represented by counsel was a violation of his sixth amendment rights.

II

The State also argues that the defendant was properly given his *Miranda* rights before he was questioned. A review of the evidence shows that Detectives Laverty and Nitsche went to Georgia and questioned defendant. He refused to answer any questions, telling the detectives, "I wanted to talk to my lawyer, first."

The police, however, ignored his request. They returned the defendant to Chicago, brought him directly to Area 2 Headquarters, and began to question him again, even though they knew that defendant's mother had retained an attorney. This was a clear violation of the prophylactic *Miranda* rule.

In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court held that before a custodial interrogation, a suspect must be informed that he has the right to remain silent and to have an attorney present. In *Edwards v. Arizona* (1981), 451 U.S. 477, 480, 68 L. Ed. 2d 378, 383, 101 S. Ct. 1880, 1882, the court ruled that a criminal defendant's rights under the fifth and fourteenth amendments were violated by the police's use of his confession without counsel present after he had requested an attorney.

*Edwards* was recently reaffirmed in *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490. In *Smith*, an 18-year-old was interrogated about a robbery. The police told the accused, " 'You have the right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?' " The accused answered, " '*Uh yeah. I'd like to do that.*' " (Emphasis in origi-

nal.) 469 U.S. 91, 93, 83 L. Ed. 2d 488, 492, 105 S. Ct. 490, 491.

Rather than stopping, however, the police continued: " 'Do you wish to talk to me at this time without a lawyer['s] being present?' " The accused answered, " 'Yeah and no, uh, I don't know what's what, really. *** All right. I'll talk to you then.' " (Emphasis in original.) (*Smith v. Illinois* (1984), 469 U.S. 91, 93, 83 L. Ed. 2d 488, 492, 105 S. Ct. 490, 492.) The United States Supreme Court held that the accused had invoked his right to have an attorney present and that the questioning should have stopped at that point. The lower courts had erred in construing Smith's request for counsel as ambiguous after looking at *subsequent* responses to continued questioning. 469 U.S. 91, 97-98, 83 L. Ed. 2d 488, 495, 105 S. Ct. 490, 492.

We have recently held that an accused's rights were violated under the *Smith* holding in *People v. Bates* (1985), 133 Ill. App. 3d 205. In *Bates*, we held that the trial court erred in denying the defendant's motion to suppress because the defendant had asserted his right to counsel, yet the police initiated questioning that eventually led to the defendant's giving an inculpatory statement.

■ In this case, the defendant's request for an attorney, like the request in *People v. Bates* (1985), 133 Ill. App. 3d 205, was unambiguous, and the request was clearer than the request in *Smith v. Illinois* (1984), 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490. Thus, all questioning by the police should have stopped. Not only did the police continue to question defendant, but they never called defendant's attorney to tell him that defendant was in custody, even though they knew defendant was represented. The mere fact that defendant may not have repeated his request for an attorney does not mean that the initial request was waived, for "a valid waiver 'cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation.' " (*Smith v. Illinois* (1984), 469 U.S. 91, 98, 83 L. Ed. 2d 488, 496, 105 S. Ct. 490, 495, quoting *Edwards v. Arizona* (1981), 451 U.S. 477, 484, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.) The facts here fall squarely under the *Smith* and *Bates* holdings.

Moreover, defendant may not have been read his rights before he made his inculpatory statement to Assistant State's Attorney McGury. She testified that she advised defendant of his *Miranda* rights, yet her memorandum summarizing the interrogation makes no mention of *Miranda*. Similarly, the report by Youth Officer Purcell, which summarizes the same interrogation, is silent on *Miranda*. As a result, the State has not proved that defendant waived his rights and voluntarily confessed under the "totality-of-the-circumstances" rule enunciated in

*Fare v. Michael C.* (1979), 442 U.S. 707, 725, 61 L. Ed. 2d 197, 213, 99 S. Ct. 2560, 2572.

### III

We address the sentencing issue because the problem may arise again on retrial. Both the State and the defendant agree that the defendant was improperly sentenced to an extended term for his voluntary manslaughter conviction because defendant was under the age of 17 at the time of the shooting. The defendant, having been born November 17, 1965, was 15 years old on August 18, 1971, the date of the shooting.

■ The defendant was sentenced under a provision of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)), which reads:

> "The following factors may be considered by the court as reasons to impose an extended sentence under Section 5—8—2 upon any offender who is *at least seventeen years old* on the date when the crime is committed: ***." (Emphasis supplied.)

Under the clear language of the statute, the sentence was improper.

For the foregoing reasons, the convictions for voluntary manslaughter and aggravated battery are reversed, and the cause is remanded for a new trial.

Reversed and remanded.

PERLIN and HARTMAN, JJ., concur.