THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT WADE, Defendant-Appellant.

First District (3rd Division)  No. 1—86—1507

Opinion filed June 28, 1989.

Michael J. Pelletier and Elizabeth E. Clarke, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Loretta Davenport, and Donna J. Norton, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Vincent Wade, was tried by a jury and convicted of murder (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)), home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12—11), and armed robbery (Ill. Rev. Stat.

1983, ch. 38, par. 18—2(a)). He argues on appeal that: (1) his sentence of natural life imprisonment for murder must be reversed because it was based upon the trial court's unsupported conclusion that defendant inflicted the fatal knife wounds on the victim; (2) defendant's sentence to natural life imprisonment must be reversed and he must be resentenced because, in violation of his right to equal protection under the law, the trial court had unbridled discretion to sentence defendant to natural life imprisonment, rather than to an extended term; (3) the trial court erred in giving a non-Illinois Pattern Jury Instruction (IPI) on felony murder.

We affirm.

At trial, Melba Martin testified that she was in Tyrone Tolliver's apartment on 93rd and Calumet streets in Chicago on August 9, 1984, when defendant and Michael Lynch wielding guns forced their entry into the apartment. She also testified that the defendant carried a knife. Martin testified that the defendant and Lynch pushed Tolliver onto a bed and asked about the "stash." Martin volunteered to help look for what they sought. Defendant held a gun to her while she searched the kitchen. Martin and Tolliver were then tied up on the bed.

Tolliver told them that he did not have the "stash" and Lynch hit him in the head with a bar. Then Martin heard a gunshot. Tolliver fell off the bed and defendant and Lynch kicked him. While Tolliver was on the floor moaning, defendant searched the apartment. Lynch threatened that Tolliver and Martin would die if he was not told where the "stash" was. Next, Lynch moved Tolliver into the bathroom while defendant moved electronic equipment out of the apartment. She heard Tolliver moaning in the bathroom, but later she did not hear any more moans. She could not see the bathroom from the bed.

When Tolliver's moans stopped, defendant and Lynch came into the room and Martin begged for her life. Defendant was sweating profusely and he told Lynch that they had to kill Martin. Lynch said that it was not the plan to kill her but defendant told Lynch to kill her. Lynch told Martin that her friend was dead but that they would cut her loose because he could not kill women or children. Before she left, she saw Lynch standing in the doorway of the bathroom and pointing a gun. When she ran out of the apartment she heard a gunshot.

Chicago police detective Frank Glynn testified that he found Tolliver's body in the bathroom facedown with his hands and feet bound with cord.

Chicago police evidence technician Robert Baikie testified on behalf of the State that in the apartment he found a white electrical cord, the ends of which appeared to have been cut, and that he viewed

cords on Tolliver's body.

Assistant State's Attorney Edward Snow testified on behalf of the State that he interviewed defendant after his arrest. Snow reported, among other details, that the defendant told him he used some telephone cord and an extension cord to tie the victims up. Defendant also told Snow that Lynch hit the man in the back of the head with the karate stick while asking him where the "stash" was.

Dr. Tae An testified on behalf of the State that on August 10, 1984, he performed an autopsy on Tolliver and observed 41 stab wounds, three lacerations, four cutting wounds and four gunshot wounds. The cause of death was multiple stab and gunshot wounds.

The jury returned a general verdict finding defendant guilty of murder. The verdict did not indicate whether defendant was guilty of murder or felony murder. At the sentencing hearing, the trial court announced its conclusion that it was defendant who inflicted the stab wounds on Tolliver. The trial court noted evidence that defendant was sweating profusely upon returning from the bathroom where Tolliver was stabbed.

The trial court also found that defendant's conduct was exceptionally brutal and heinous and indicative of wanton cruelty. The trial court then found defendant eligible for extended-term sentencing. The trial court noted defendant's prior convictions for robbery and two armed robberies and found that defendant had no rehabilitative potential. Defendant was sentenced concurrently to natural life imprisonment without the possibility of parole for murder, and to 30 years' imprisonment for each of the armed robberies and the home invasion.

Defendant argues that his sentence to natural life imprisonment must be reversed and that he must be resentenced because the trial court concluded erroneously that he inflicted the knife wounds on the victim.

A defendant may be sentenced to natural life imprisonment upon a conviction for murder:

> "(b) if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty *or* that any of the aggravating factors listed in subsection (b) of Section 9—1 of the Criminal Code of 1961 are present." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b).

Defendant argues that his profuse sweating was insufficient evidence that he inflicted the fatal wounds on the victim, especially in light of Martin's other testimony that defendant had been moving the victim's personal property out of the apartment and loading it into

Lynch's car. Defendant also argues that the fact that an evidence technician found some electrical cord, the ends of which appeared to have been cut, was not evidence that defendant had a knife. However, Melba Martin testified she saw defendant with a knife. She never saw Lynch in possession of a knife.

But even if the trial court erred in finding that defendant had actually inflicted the fatal wounds, a sentence of natural life imprisonment could be upheld on the basis that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b).

A defendant who has been found guilty of felony murder through accountability can receive a natural life sentence based upon the "brutal" or "heinous" behavior of the co-offender. (Ill. Rev. Stat. 1983, ch. 38, pars. 5—2(c), 1005—8—1(a)(1)(b).) "Brutal" has been defined as including conduct that is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 501, 431 N.E.2d 344.) "Heinous" has been defined as including conduct that is hatefully or shockingly evil, grossly bad, and enormously and flagrantly criminal. (88 Ill. 2d at 501.) A sentence of natural life imprisonment is not limited to those murders involving torture or infliction of unnecessary pain. (88 Ill. 2d at 501.) Here, the victim was beaten on the head, bound, stabbed and shot repeatedly and lay moaning on a bathroom floor suffering for some time before dying. Therefore, the trial court could have properly found that the murder was accompanied by exceptionally brutal behavior as contemplated by the statute.

Defendant argues next that, in violation of the equal protection clause's guaranty of equality of punishment, the trial court had unbridled discretion to sentence defendant to natural life imprisonment, rather than to an extended term, pursuant to a finding that the offense was accompanied by brutal or heinous behavior. Defendant also terms the court's choice as arbitrary, capricious, and having no basis for differentiating between natural life imprisonment and an extended-term sentence so that similarly situated persons could be treated unequally based upon identical findings. As discussed above, a sentence of natural life imprisonment may be imposed if the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(1)(b).) A felony that is accompanied by this same behavior can also be punishable by an extended-term sentence. Ill. Rev. Stat. 1983, ch. 38, pars. 1005—8—2(a), 1005—5—3.2(b)(2).

Not only was the issue waived because it was not raised below,

the argument is also unsupported. In *People v. Cartalino* (1982), 111 Ill. App. 3d 578, 591-92, 444 N.E.2d 662, the court held that the sentence of natural life imprisonment could not be imposed solely on the basis of the seriousness of the offense without weighing defendant's rehabilitative potential. Here, the sentencing court examined the aggravating and mitigating factors and concluded defendant had no rehabilitative potential. Thus, the trial court correctly applied its discretion.

Defendant argues finally that the trial court erred in giving a non-IPI jury instruction on felony murder based upon an instruction in *People v. Golson* (1965), 32 Ill. 2d 398, 207 N.E.2d 68, because *Golson* was decided prior to the inclusion of felony murder in the Criminal Code, because there were applicable IPI jury instructions that the trial court was required to give by Supreme Court Rule 451(a) (107 Ill. 2d R. 451(a)), and because the instruction was not impartial.

Among the verdict forms, the jury was given guilty and not guilty forms for murder, but not for felony murder. The jury found defendant guilty of home invasion, the armed robbery of Tolliver and Martin, and the murder of Tolliver. The motion for a new trial argued, in part, that it had been error to give the non-IPI instruction. The motion was denied.

The following IPI instructions were given to the jury:

"A person commits the offense of murder when he kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual or another; or he knows that such acts will cause death to that individual or another; or he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or he is committing the offense of armed robbery or the offense of home invasion." (Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981).)

"To sustain the charge of murder, the State must prove the following propositions:

First: That the Defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Tyrone Tolliver; and

Second: That when the Defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to Tyrone Tolliver; or he knew that his act would cause death or great bodily harm to Tyrone Tolliver; or he knew that his acts created a strong probability of death or great bodily harm to Tyrone Tolliver; or he was committing the of-

fense of armed robbery or the offense of home invasion.

   If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty.

   If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the Defendant not guilty." (Illinois Pattern Jury Instructions, Criminal, No. 7.02 (2d ed. 1981).)

The jury was also instructed using IPI Criminal 2d No. 5.03 as to accountability, *i.e.*, that a person is legally responsible for the conduct of another person if with intent he aided another in committing an offense. Illinois Pattern Jury Instructions, Criminal, No. 5.03 (2d ed. Supp. 1989).

   The State also tendered a non-IPI instruction derived from an instruction given in *People v. Golson* (1965), 32 Ill. 2d 398, 207 N.E.2d 68. After some revision by the trial court, the following non-IPI instruction was approved:

   "The Court instructs the Jury, as a matter of law, that in this case to constitute the crime of murder it is not necessary for the State to show that it was or may have been the original intent of the Defendant or his co-conspirator or either of them to kill the deceased, Tyrone Tolliver. It is sufficient if the Jury believe [*sic*] from the evidence beyond a reasonable doubt that the Defendant and his co-conspirator combined to do an unlawful act, such as to take personal property from Tyrone Tolliver by force while armed with a dangerous weapon and that the deceased was killed by the Defendant or a co-conspirator in an attempt to execute such purpose."

Defense counsel objected because the instruction was non-IPI, because there was a jury instruction on accountability, and because felony murder was included in the murder instruction. The trial court stated that the instruction adequately explained the complex concept of felony murder.

   ■ At the time of defendant's conduct the murder statute stated, in relevant part:

   "(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

                              * * *

   (3) He is attempting or committing a forcible felony other than voluntary manslaughter." (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a).)

Section 9—1(a)(3) sets forth the offense of felony murder, an offense which does not require that defendant intended to kill when he performed the acts resulting in death. (*People v. Miller* (1980), 89 Ill. App. 3d 973, 979, 412 N.E.2d 175.) Under the felony murder doctrine, a defendant can also be liable for the acts of another which caused the victim's death when the death occurred as a result of the commission of the felony in which he assisted or for which he was otherwise responsible on the basis of accountability. (Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c); *Miller*, 89 Ill. App. 3d at 979.) One is legally accountable for the conduct of another when:

> "(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1983, ch. 38, par. 5—2(c).

The challenged instruction in *Golson* stated in relevant part:

> "[T]o constitute the crime of murder it is not necessary for the State to show that it was or may have been the original intent of the defendants or their co-conspirator or any of them to kill the deceased. *** It is sufficient if the jury believe [*sic*] from the evidence beyond a reasonable doubt that the defendants and their co-conspirator combined to do an unlawful act, such as to steal from the United States mails and that the deceased was killed by a co-conspirator in an attempt to execute such purpose." *Golson*, 32 Ill. 2d at 406.

In *Golson*, defendants argued that the felony murder doctrine did not apply to a conspiracy to commit a non-forcible felony. This argument was rejected, and the court held, after consideration of the other instructions on the subject and the facts of the case, that it had not been improper or misleading to give the non-IPI instruction. The *Golson* court did not address the issue whether it was an error to give the non-IPI instruction when IPI instructions included felony murder.

■ Supreme Court Rule 451(a) provides that an applicable criminal IPI instruction should be given. (107 Ill. 2d R. 451(a).) Supreme Court Rule 451(a) also provides that an impartial non-IPI instruction may be given if the IPI instruction does not accurately state the law or does not cover a subject in which the jury should be instructed. (107 Ill. 2d R. 451(a).) It is within the discretion of the trial court to give a non-IPI instruction. *People v. Sequoia Books, Inc.* (1986), 145 Ill. App. 3d 1054, 1064, 495 N.E.2d 1292.

■ Defendant relies on *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526, to argue that even the giving of a legally correct non-

IPI instruction can be reversible error, because there the use of legally correct, but unnecessary, non-IPI instructions only increased the possibility of confusion to the jury. But in the instant case, the additional instructions explained that no intent to kill was required and explained the requirement that the death occur in an attempt to commit a conspired offense. These concepts were not explained by the IPI instructions. Therefore, it was not reversible error to have so instructed the jury.

Defendant also argues that the trial court erred in relying upon *Golson* because the murder statute in effect in 1960 did not include a definition of felony murder. (Ill. Rev. Stat. 1959, ch. 38, par. 358.) Defendant argues that therefore the *Golson* court *had* to rely upon a non-IPI instruction to clarify the theory of felony murder. But as explained above, the non-IPI instruction explained concepts not clarified by the IPI instructions.

Defendant argues that the non-IPI instruction injected a specific example of guilt and referred to a coconspirator when conspiracy had not been charged. He argues, therefore, that the instruction was prejudicial in violation of Supreme Court Rule 451(a)'s admonishment that the instruction be impartial and free from argument. 107 Ill. 2d R. 451(a).

■ The non-IPI instruction followed *Golson* in referring to a coconspirator and in giving the specific example of the felony that would provide the predicate for a finding of guilt of felony murder. We believe the use of the word "coconspirator" did not prejudice the jury in its role as fact finder in determining whether defendant and Lynch had conspired to rob Tolliver and to invade his home. It also was not error to refer to the taking by force of property from the victim because defendant was charged with armed robbery and because the instruction thereby explained how the death had to occur in an attempt to execute a felony which defendant had conspired to commit.

The judgment of the circuit court is affirmed.

Judgment affirmed.

FREEMAN, P.J., and RIZZI, J., concur.