THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
BRODIE YOUNG, Defendant-Appellee.

First District (3rd Division)   No. 1—87—3626

Opinion filed July 18, 1990.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, James E.

Fitzgerald, and David R. Butzen, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Stephanie L. Ellbogen and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The State seeks reversal of an order of the trial court suppressing defendant's post-arrest statements. Pursuant to Supreme Court Rule 604(a)(1) (107 Ill. 2d R. 604(a)(1)), the State has filed a certificate of impairment.

The facts in this case are not disputed. On March 12, 1987, a fugitive warrant was issued in Illinois for defendant's arrest for the murder of Yankal Rudminsky. Pursuant to the warrant, defendant was arrested by law enforcement authorities on March 16 in Oneida, Wisconsin.

On March 17, a hearing was held in the circuit court of Outagamie County, Wisconsin, on a petition seeking temporary physical custody of defendant on the grounds that he was a fugitive from Illinois. Defendant was represented by counsel at the hearing.

In support of the petition, the assistant District Attorney presented the testimony of Lieutenant Robert Nelson of the Outagamie County sheriff's department. Nelson testified that on March 15, 1987, he received a telephone call from Detective Larry Thezan of the Chicago police department. According to Nelson, Thezan informed him of the arrest warrant for defendant and stated that he believed that defendant was living with his aunt in Oneida, Wisconsin. Subsequently, Nelson and another officer arrested defendant at the address given to them by Thezan. Based on the testimony, the court granted the District Attorney's petition.

On June 9, 1987, defendant's attorney informed the court that defendant would waive extradition to Illinois. The court directed the sheriff of Outagamie County to comply with the terms of the fugitive warrant and surrender defendant to the Illinois authorities.

At the close of the hearing, defendant's attorney advised the court that defendant, pursuant to the fifth and sixth amendments, was asserting, for the present and future, his right to remain silent and to have the assistance of counsel prior to any interrogation. Counsel stated that he was concerned that defendant might be subjected to coercion, duress, and possible violence by the Illinois authorities on the return trip to Illinois in order to compel defendant to con-

fess or make a self-incriminating statement. Defendant, when asked by counsel whether he wished to assert these rights, responded, "Right." Defense counsel then requested that the Illinois officers transporting defendant be told of the assertion of his rights, and further, that the court order that the Illinois authorities not attempt to interrogate defendant outside of the presence of defendant's attorney.

The trial court agreed to enter such an order for defendant to take with him. The court noted, however, that it did not know whether such an order would be valid. There is no evidence in the record to indicate that such an order was ever entered.

Defendant made statements to Thezan on the return trip to Illinois. Defendant motioned to suppress those statements. On September 22, 1987, at the hearing on defendant's motion, Thezan testified that on June 12, he and Detective Ronald Yawger drove to Outagamie County jail to transport defendant back to Illinois. According to Thezan, defendant was turned over to him and the other detective by the Outagamie sheriffs. Thezan was not informed that defendant had indicated that he wished to exercise his right to remain silent or that he had either requested or retained an attorney.

When en route to Chicago, Thezan asked defendant whether he knew what "this was about," and defendant responded that he did. In response to Thezan's question whether he wanted to talk about it, defendant responded that he did. Thezan then read defendant his *Miranda* warnings, defendant acknowledged that he understood them, and gave Thezan a statement concerning the murder.

Upon arriving in Chicago, defendant was taken to Area 6 Violent Crimes and placed in an interview room. Defendant was again read his *Miranda* warnings, he acknowledged that he understood them, and again made statements concerning the murder. Defendant subsequently made a third statement to Assistant State's Attorney Trutenko after again being given *Miranda* warnings. According to Thezan, at no time did defendant indicate that he wanted an attorney present or that he had been represented by an attorney in Wisconsin or in Illinois.

Defendant premised his motion to suppress on the grounds that the Illinois authorities had violated his fifth and sixth amendment rights to remain silent and to have the assistance of counsel. He argued that the assertion of those rights in Wisconsin should be imputed to the Illinois authorities. The State argued that knowledge should not be imputed, and that the statements should not be suppressed because the Illinois law enforcement authorities did not know, nor could they reasonably have known, that defendant had indicated

that he wished to remain silent and not be questioned outside of the presence of counsel. The court granted defendant's motion. We reverse.

The State contends that the trial court erred in suppressing defendant's statement. It urges three arguments in support of its position. Defendant, naturally, argues to the contrary. Since the fifth and sixth amendment rights exist independently of each other, we will address each separately.

■ The fifth amendment of the United States Constitution provides, in pertinent part, that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." (U.S. Const., amend. V.) An accused, subjected to custodial interrogation, is entitled to admonition of his fifth amendment rights prior to the commencement of any questioning. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Once a suspect has asserted his right to remain silent, his subsequent waiver of that right, when police again initiate interrogation, will be deemed legally valid if the waiver is knowing, intelligent, and voluntary. (*Michigan v. Mosley* (1975), 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321.) Contrarily, where the accused has asserted his right to an attorney during the interrogation, rather than merely his right to remain silent, his subsequent waiver of the right to counsel will be deemed involuntary, as a matter of law. *Edward v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.

The State first argues that there was no violation of defendant's fifth amendment rights because those rights did not attach until defendant was subject to custodial interrogation. It argues, since defendant was not subjected to interrogation while he was in custody in Wisconsin, he was not "entitled to invoke the protection afforded by *Miranda*." The State, quoting *Rhode Island v. Innis* (1980), 446 U.S. 291, 300, 64 L. Ed. 2d 297, 307, 100 S. Ct. 1682, 1689, argues that *Miranda* protections "are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation."

■ We take no exception to the State's interpretation of the application of *Miranda*. It is, however, axiomatic that the thrust of *Miranda* was to create new duties for the police, not to diminish the preexisting fifth amendment rights of individuals. An individual's fifth amendment rights exist exclusive of the right to receive *Miranda* warnings. Therefore, we do not view custodial interrogation as an indispensable requisite for the invocation of those rights.

In the typical case, a defendant asserts his fifth amendment rights

at the point of interrogation to the interrogating officer. The circumstance whereby an accused may be in custody, and yet not have been subjected to interrogation, means only that he was not entitled to be admonished of his right to keep silent and to have the assistance of counsel during interrogation, not that he did not have such rights. While it is custodial interrogation which triggers the requirement for *Miranda*, the right to remain silent and to assert one's desire to have assistance of counsel during interrogation may attach as early as at the investigatory stage of the prosecutorial process. However, the assertion of the right to counsel must be conveyed to someone, usually a law enforcement authority, who would otherwise seek to question the accused in the adversarial or investigative process.

In *People v. Christomos* (1988), 172 Ill. App. 3d 585, 527 N.E.2d 41, the defendant was involved in a personal injury accident with his wife. The police arrived on the scene and transported the defendant to a hospital. Because the defendant was upset to the point of being unruly, the policeman handcuffed him; however, the policeman considered the defendant to be a victim, and not a suspect, and therefore, he did not arrest him. While the defendant was at the hospital, he stated that he wanted the assistance of an attorney. When the defendant was subsequently placed in police custody, he again asserted his right to counsel.

The court found that, in addition to the defendant's assertion of his rights after having being taken into custody, the defendant had unequivocally invoked that right even before he was in custody. The police were aware of the defendant's precustody request, yet they initiated interrogation. The court held the police had failed to honor the defendant's fifth amendment right to counsel and, therefore, the defendant's statements were suppressed. We recognize that *Christomos* presents the opposite circumstance of this case, yet we believe that it lends support to our belief that the right to assert one's fifth amendment rights need not have, as a precondition, custodial interrogation. See also *People v. Knapp* (1988), 533 N.Y.S.2d 413, 141 Misc. 2d 517.

While we here conclude that a defendant may invoke his fifth amendment rights prior to the initiation of custodial interrogation, we believe, that on this set of facts, defendant's assertion was ineffective and ultimately unavailing. We turn then to the State's argument that defendant's precustodial interrogation assertion of his fifth amendment rights to the Wisconsin authorities should not be imputed to the Chicago authorities.

It is settled in Illinois that knowledge, on the part of law en-

forcement authorities within the State, of an accused's invocation of his fifth or sixth amendment rights will be imputed to other law enforcement authorities within the State. (See *People v. Medina* (1978), 71 Ill. 2d 254, 375 N.E.2d 78; *People v. White* (1975), 61 Ill. 2d 288, 335 N.E.2d 457, *cert. denied* (1976), 424 U.S. 970, 47 L. Ed. 2d 738, 96 S. Ct. 1469; *People v. Blanchard* (1967), 37 Ill. 2d 69, 224 N.E.2d 813; *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.) The objective of imputing such knowledge is twofold. One is to prevent the accused's request for counsel during interrogation from being nullified by police authorities " 'by the expedient of transferring his custody for questioning to an officer who would be unaware of the request for an attorney' " (*White*, 61 Ill. 2d at 294, quoting *Blanchard*, 37 Ill. 2d at 73), and two is to prevent " 'an attempt by police to avoid responsibility by dividing it among different individuals' " (*People v. Warner* (1986), 146 Ill. App. 3d 370, 379, 496 N.E.2d 1010, *cert. denied* (1987), 480 U.S. 938, 94 L. Ed. 2d 776, 107 S. Ct. 1586, quoting *People v. Gabbard* (1979), 78 Ill. 2d 88, 98, 398 N.E.2d 574). The rule as it is applied to intrastate agents has not been so routinely applied when the law enforcement authorities, to whom the right has initially been asserted, are interstate.

Defendant places great reliance on *People v. Bates* (1985), 133 Ill. App. 3d 205, 478 N.E.2d 1106. In *Bates*, the defendant, who was suspected of having committed a crime in Illinois, surrendered himself to the Iowa authorities. The defendant told the Iowa authorities that he would not speak about the crime until he talked to his attorney. Illinois police travelled to Iowa and transported the defendant to Chicago. No interrogation occurred on the return trip; however, once back in Illinois, the defendant was given *Miranda* warnings and subsequently questioned by a Cook County assistant State's Attorney.

This court found that the defendant, Bates, had made a clear assertion of his rights in Iowa. The court noted that at some time prior to the defendant's trial, the Chicago police were aware, from information contained in a police "street file," that the defendant would not talk to the Iowa authorities until he spoke to his attorney. We there stated that even though there was nothing to indicate that the State's Attorney had that information prior to interrogating the defendant, "even a good-faith lack of knowledge on the part of the Cook County authorities [would] not affect our holding." *Bates*, 133 Ill. App. 3d at 207.

Significantly, in *Bates*, the Chicago police had actual knowledge of the defendant's assertion of his rights, whereas, in the present case, the Chicago police had no such knowledge. This court did not address

whether, in the absence of the street file, or some other evidence that the Chicago police knew of the defendant's assertion of his rights, that knowledge would have been imputed to other State agents. However, we believe that the knowledge was imputed to the State's Attorney because it had been contained in the files of the Chicago authorities, not because it was known to the Iowa authorities.

Defendant also argues, with reliance on *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093, that the lack of diligence by the Chicago police in ascertaining whether defendant had asserted his rights cannot justify their failure to honor those rights. Further, he argues, custodial interrogation must be conducted pursuant to established procedures which must enable an officer who proposes to initiate interrogation to determine whether the suspect made a prior request for counsel. Defendant then asserts that the Chicago authorities had a duty to inquire of the Wisconsin authorities whether defendant had asserted his rights.

Initially, we note that in *Roberson* the court's comments regarding the officer's diligence were in reference to the fact that the defendant there had not only communicated the assertion of his rights to the initial interrogating officer, but the invocation had also been memorialized in a written report which was available to the officer who conducted the second interrogation. The second officer simply failed to examine the report. Additionally, we note that the knowledge attributed in *Roberson* was between agents within the same State, and seemingly in the same agency. Further, we believe that the *Roberson* court's concern for following established procedures for interrogation contemplated intrastate conduct, not interstate. A different conclusion would place an unreasonable burden on law enforcement authorities to be familiar with both intrastate and interstate procedures.

As we have stated, there is no evidence that any of the papers which Detective Thezan obtained from the Wisconsin authorities contained any reference to defendant's invocation of the right to counsel. Further, we do not believe that the law enforcement authorities here should have been required to make inquiries of the Wisconsin authorities as to whether defendant had invoked his fifth amendment rights. Such a requirement would impose an additional duty upon law enforcement authorities to investigate whether the right had been asserted and to whom. We decline the imposition of a duty with seemingly limitless extensions.

We agree with the State's argument that there was no expectation that defendant here would be subjected to interrogation in Wisconsin regarding the offense and would therefore invoke his rights.

Extradition proceedings are limited in nature. Under the Uniform Criminal Extradition Act, the guilt or innocence of the accused may not be inquired into, except as it may be involved in identifying the person held as the person charged with the crime. (Wis. Stat. Ann. §976.03 (West 1985); Ill. Rev. Stat. 1987, ch. 60, par. 37.) Moreover, since extraditions are not considered criminal *per se*, they do not give rise to the need for constitutional safeguards as in judicial criminal proceedings. Thus, we find it reasonable that the Chicago authorities did not expect that defendant had invoked his constitutional rights at the extradition proceeding.

We believe that *People v. Warner* (146 Ill. App. 3d 370, 496 N.E.2d 1010), while not entirely on point, provides the necessary guidance for the proper resolution of this issue. In *Warner*, the defendant, who was suspected of having committed a crime in Illinois, was arrested by the Florida FBI. The defendant was advised by the FBI of his *Miranda* rights and taken to their office for processing. The defendant told the FBI agents that he wished to speak with an attorney prior to answering any questions, and the agents immediately refrained from asking any questions. The FBI agents did not notify the Chicago police of defendant's arrest; however, one of the agents did prepare a summary of the FBI's contact with the defendant and sent it to the Chicago office of the FBI. The summary was not disseminated to any other individual or agency. The defendant was subsequently turned over to the Florida authorities, who detained him in a Florida prison.

About three months later, the Chicago police flew to Florida and returned the defendant to Illinois. Papers which the Chicago police received from the Florida correctional facility did not include any report prepared by the FBI. The defendant was given *Miranda* warnings; however, no interrogation occurred until the defendant was back in Chicago. Prior to interrogation by an assistant State's Attorney, the defendant was again given *Miranda* warnings. The defendant acknowledged that he understood his rights and agreed to speak with the interrogating attorney.

The defendant subsequently motioned to suppress the statements which he had made to the Chicago authorities on the basis that the interrogation violated his fifth amendment rights which he had invoked when he had been questioned by the FBI in Florida. In affirming the trial court's denial of the defendant's motion, the court stated, *inter alia*, that the danger of coercive interrogation did not arise where the defendant, while in Florida, had been given *Miranda* warnings, requested and was given the assistance of counsel, and there

was no indication that there was any impropriety in his treatment. Additionally, the court stated that there was nothing in the record to demonstrate that the FBI or the Chicago authorities had engaged in a course of conduct which would have the effect of shifting the defendant's custody and interrogation from one unit to another so that the authorities could avoid the responsibility of respecting his request for counsel, and thereby force him to confess to his involvement in criminal activity.

Similarly, in this case, there is no indication that defendant, while in Wisconsin, was subjected to any interrogation or that his will was in any way overcome. Further, and most compelling, the circumstances, against which the imputation of knowledge is designed to protect, simply are not present in this case. Like in *Warner*, we are unable to conclude that the facts here present circumstances wherein authorities wore down the accused and persuaded him to incriminate himself, notwithstanding his earlier request for assistance of counsel. *Smith v. Illinois* (1984), 469 U.S. 91, 98, 83 L. Ed. 2d 488, 496, 105 S. Ct. 490, 494.

■ Defendant makes much of the fact that, unlike in this case, in *Warner* three months had passed before the Chicago authorities initiated interrogation of the defendant. While the three-month period might have been a factor in the court's decision not to impute the Florida knowledge, we do not believe it to have been the most significant factor. Clearly, the court's decision was based on a combination of circumstances, which led it to ultimately conclude that it would be unreasonable to impute the Florida knowledge. We likewise believe that, on these facts, it would be unreasonable to impute to the Chicago authorities knowledge of the Wisconsin authorities.

Finally, the State argues that even if defendant did properly invoke his fifth amendment rights during the extradition proceeding, he subsequently waived them.

The State urges, relying on *Dunkins v. Thigpen* (11th Cir. 1988), 854 F.2d 394, *cert. denied* (1989), 489 U.S. 1059, 103 L. Ed. 2d 597, 109 S. Ct. 1329, and similar cases, that if a suspect is released from custody after invoking his fifth amendment right to counsel, the request is dissipated and the *per se* rule in *Edwards* is inapplicable. *Dunkins* is inapposite since defendant here was continuously in custody, from the time of his arrest in Wisconsin until his extradition to Illinois.

However, since we have determined that knowledge of defendant's assertion of his rights cannot be attributed to the Chicago police, the *per se* rule in *Edwards* was not contravened and is not appli-

cable here. Therefore, a determination of the voluntariness of defendant's waiver must be determined based on the totality of the circumstances. See *Warner*, 146 Ill. App. 3d at 378.

We note in passing that the State's reliance on *Commonwealth v. Santiago* (Pa. Super. Ct. 12/29/89), No. 2164, is misplaced. According to the State's brief, in *Santiago*, the court concluded that because the defendant, after invoking his right to counsel, was given the opportunity to consult with counsel on one charge, the "prophylactic" purpose of *Edwards* had been satisfied, and therefore the police were not precluded from initiating interrogation on unrelated charges. The State then argues that since defendant here had the benefit of counsel, *Edwards* did not apply to the subsequent questioning. We note that unlike *Santiago*, in the present case, the interrogation of defendant, which followed his attempt to assert his fifth amendment rights, pertained to the same, not an unrelated, charge.

Defendant's waiver would be valid only if it was knowing, intelligent, and voluntary. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 433, 521 N.E.2d 38, *cert. denied* (1988), 488 U.S. 871, 102 L. Ed. 2d 156, 109 S. Ct. 187; *People v. Stevens* (1989), 188 Ill. App. 3d 865, 544 N.E.2d 1208.) Defendant makes reference to the fact that, at the time he was transported from Wisconsin, he was only 17 years old. The trial court made no findings of fact on the issue of the voluntariness of waiver and we do not decide that question here. We conclude only that there is no evidence presented, other than defendant's age, to support a claim that he was coerced into making statements to the Chicago authorities.

■ We turn now to defendant's argument that his sixth amendment right to counsel was also violated. The right to counsel is provided in the sixth amendment to the Constitution of the United States and is made binding upon the States by the fourteenth amendment. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 342, 9 L. Ed. 2d 799, 804, 83 S. Ct. 792, 795.) Under the sixth amendment, a defendant has a right to counsel at all critical stages of the criminal proceedings against him. (*United States v. Wade* (1967), 388 U.S. 218, 224, 18 L. Ed. 2d 1149, 1156, 87 S. Ct. 1926, 1931.) A critical stage of a criminal proceeding is when criminal charges have been brought in a judicial tribunal against a defendant, entitling the defendant to his constitutional right to counsel. *Kirby v. Illinois* (1972), 406 U.S. 682, 688, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1881-82.

■ Unlike the fifth amendment right to counsel, the sixth amendment right to counsel attaches when adversarial judicial proceedings have been initiated. (*Kirby*, 406 U.S. at 688, 32 L. Ed. 2d at 417, 92

S. Ct. at 1881.) The methods of initiating adversarial judicial proceedings may be by way of formal charge, preliminary hearing, indictment, information or arraignment. (*Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 417, 92 S. Ct. at 1882; *People v. Burbank* (1972), 53 Ill. 2d 261, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) However, it has not been held that an arrest, by itself, triggers the right to counsel. (*United States v. Gouveia* (1984), 467 U.S. 180, 189-90, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298.) There is authority for the proposition that whether adversarial proceedings commence with the filing of a complaint is dependent upon the degree of prosecutorial involvement. See *State v. Johnson* (Iowa 1982), 318 N.W.2d 417, 435, *cert. denied* (1982), 459 U.S. 848, 74 L. Ed. 2d 95, 103 S. Ct. 106.

In Illinois, there has been a split of opinion in the appellate court on this issue. Compare *People v. Fleming* (1st Dist. 2d Div. 1985), 134 Ill. App. 3d 562, 480 N.E.2d 1221; *People v. Curtis* (1st Dist. 3d Div. 1985), 132 Ill. App. 3d 241, 476 N.E.2d 1162, *rev'd on other grounds* (1986), 113 Ill. 2d 136, 497 N.E.2d 1004; *People v. Jumper* (4th Dist. 1983), 113 Ill. App. 3d 346, 447 N.E.2d 531 (sixth amendment right automatically attaches upon filing of criminal complaint), with *People v. Racanelli* (1st Dist. 5th Div. 1985), 132 Ill. App. 3d 124, 476 N.E.2d 1179; *People v. Boswell* (1st Dist. 4th Div. 1985), 132 Ill. App. 3d 52, 476 N.E.2d 1154, *appeal allowed* (1986), 111 Ill. 2d 571, 488 N.E.2d 273 (right to counsel does not attach upon filing of criminal complaint and issuance of arrest warrant absent proof of significant prosecutorial involvement in procuring arrest warrant).

Our supreme court, without expressly stating, has apparently adopted the latter view. In *People v. Wilson* (1987), 116 Ill. 2d 29, 50-51, 506 N.E.2d 571, the court noted that the complaint in that case was presented to the judge *ex parte*, by a police officer, rather than by an assistant State's Attorney, and that the complaint was not filed in court until after the defendant appeared in the lineup. The court then held that the procedure followed there could not fairly be construed as the beginning of adversary proceedings between the State and the defendant.

■ In this case, the complaint for a preliminary hearing was presented to the judge by a detective, not by an assistant State's Attorney, and it was stamped filed in the circuit court on June 15, 1987, after defendant had been extradited from Wisconsin. Further, at the hearing on defendant's suppression motion, the State argued that there was absolutely no evidence presented that the State's Attorney had anything to do with securing the warrant for defendant's arrest.

We have not been presented any facts which indicate the level of the prosecution's involvement, if any, in the extradition process. We note, without further comment, that there is a notation on defendant's arrest report which indicates that the warrant was approved by Assistant State's Attorney Trutenko. Based on the rule adopted in *Wilson*, in the absence of evidence indicating significant prosecutorial involvement, we conclude that the filing of the complaint here did not mark the beginning of criminal adversary proceedings.

■ Defendant asserts that the extradition proceeding was tantamount to an "arraignment or similar proceeding," and marked the commencement of adversary judicial proceedings. We disagree. The sixth amendment right attaches at points in the adversary judicial criminal proceedings against a defendant which may be termed a "critical stage." (*Powell v. Alabama* (1932), 287 U.S. 45, 77 L. Ed. 2d 158, 53 S. Ct. 55.) Generally, a critical stage has been reached whenever constitutional or other rights can be asserted or waived, or where events occur that can prejudice the defendant's subsequent trial. See *People v. Bonner* (1967), 37 Ill. 2d 553, 229 N.E.2d 527, *cert. denied* (1968), 392 U.S. 910, 20 L. Ed. 2d 1368, 88 S. Ct. 2067.

As we have stated, an extradition proceeding, unlike an arraignment, involves no inquiry into the guilt or innocence of an accused. Also, as we have noted, there is authority for the proposition that an extradition proceeding is not criminal in nature *per se*. Further, we have reviewed the transcript of defendant's extradition proceedings and have found them to have been in compliance with the statutory mandate, occasioning no event whereby defendant's rights were in any way jeopardized. We do not believe that the extradition proceedings constituted a "critical stage" in the judicial criminal proceedings here. See *United States ex rel. Calhoun v. Twcmey* (7th Cir. 1971), 454 F.2d 326.

For the foregoing reasons, we reverse the order of the circuit court.

Reversed.

CERDA, P.J., and WHITE, J., concur.