THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL LYNCH, Defendant-Appellee.

First District (4th Division)   No. 1—90—1697

Opinion filed August 20, 1992.

Jack O'Malley, State's Attorney, of Chicago (Gael M. O'Brien, Special Assistant State's Attorney, and Renee Goldfarb and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

In August 1984, a complaint for preliminary examination was filed alleging that defendant Michael Lynch had committed a murder in Cook County a few days earlier and a warrant was issued for his arrest. While the arrest warrant was outstanding, defendant's co-offender, Vincent Wade, was prosecuted and convicted for the murder. Thereafter, the Chicago police department learned that defendant was being held in Los Angeles, California. Extradition proceedings were instituted and defendant was appointed local counsel in that matter. Defendant waived formal extradition proceedings and was returned to Chicago by police officers.

Following his arrival at Chicago police headquarters, defendant was advised of his *Miranda* rights, which he stated that he understood. Defendant agreed to speak to authorities, and gave incriminating statements regarding his involvement in the 1984 murder. Thereafter, defendant was indicted for the offense and appointed counsel to represent him on these charges. He filed a motion to suppress his inculpatory statements, arguing that the statements had been taken in violation of his sixth amendment right to counsel under the United States Constitution. (U.S. Const., amend. VI.) Following a hearing, the trial court allowed the defendant's motion to suppress, and the State appeals.

Upon review, defendant claims that three circumstances caused to trigger his sixth amendment right to assistance of counsel: (1) the filing of the complaint for preliminary examination in order to obtain a warrant for defendant's arrest; (2) the commencement of extradition proceedings to cause his return to Illinois; and (3) the prosecution and conviction of his co-offender with respect to the 1984 murder. We con-

clude that these factors, considered separately or cumulatively, did not cause to activate defendant's sixth amendment right to counsel when he was questioned by authorities upon his arrival in Chicago on December 13, 1988. In addition, assuming *arguendo* that defendant's sixth amendment right to an attorney had arisen when he was first questioned by authorities, we determine that the officers' admonition of *Miranda* rights to defendant, which defendant stated he understood and agreed to waive, was sufficient to waive defendant's sixth amendment right to counsel. Accordingly, we reverse the trial court's allowance of defendant's motion to suppress, and remand for further proceedings consistent herewith.

The record reveals the following pertinent facts. On August 12, 1984, Detective Frank Glynn of the Chicago police department filed a complaint for preliminary examination alleging that defendant had murdered Tyrone Tolliver in Cook County on August 9, 1984. On that same date, a judge of the circuit court of Cook County issued a warrant for defendant's arrest. Defendant's co-offender, Vincent Wade, was later convicted for his involvement in the 1984 Tolliver murder. See *People v. Wade* (1989), 185 Ill. App. 3d 898, 542 N.E.2d 58.

Approximately four years after the issuance of the warrant for defendant's arrest, authorities of the Chicago police department learned that defendant was being held in Los Angeles, California. Extradition proceedings were instituted in Los Angeles in August 1988 and defendant was appointed local counsel to represent him. Defendant executed a waiver of formal extradition proceedings on August 18, 1988. Defendant was returned to Chicago by Detectives Frank Glynn and George Basile of the Chicago police department on December 13, 1988.

According to the testimony of Detective Glynn at the hearing on defendant's motion to suppress, the detectives first saw defendant in a lock-up facility at the airport in Los Angeles in the early afternoon hours of December 13, 1988. The officers informed defendant that they would be returning him to Chicago because of a warrant for his arrest with respect to a murder that had occurred in 1984. Defendant stated that he "knew what it was about." Although no questioning was conducted at this time, the detectives advised defendant of his *Miranda* rights, which he said he understood.

Detective Glynn stated that, later that afternoon, the detectives returned to the lock-up facility to transport defendant to the air terminal. According to Detective Glynn, neither he nor Detective Basile ever initiated any conversation with the defendant regarding the murder during the airline flight to Chicago. Detective Glynn testified that

there were several occasions during the flight when the defendant asked what was going to happen upon their return to Chicago. In each instance, Detective Basile informed defendant that the case would be discussed when they arrived at the police station in Chicago.

Detective Glynn testified that the flight landed at O'Hare later in the day and defendant arrived with the detectives at Area 2 police headquarters at approximately 8:30 p.m. Defendant was placed in an interview room and advised that the officers would return shortly. When the detectives returned, they advised defendant that he was in custody for the murder of Tolliver that occurred in August 1984. Defendant stated that he understood. Defendant was also advised of his *Miranda* rights, which he stated that he understood. The detectives then informed defendant that the officers would hold a lineup at approximately 9:30 p.m., and that defendant had a right to have an attorney present for the lineup if he wished. According to Detective Glynn, defendant "stated he did not need one and he was willing to stand in the lineup." The detectives told the defendant they would speak to him after the lineup, and the defendant asked who would view the lineup. The detectives responded that the lineup would be viewed by the "girl that was in the apartment the night of the murder." Defendant said he would participate in the lineup.

After the lineup, the detectives went back to the interview room where defendant had been placed. Defendant was again advised of his *Miranda* rights, which he stated that he understood. Defendant agreed to speak to the officers, and the detectives told him that defendant had been identified in the lineup. Thereafter, a conversation ensued between the officers and the defendant, during the course of which defendant made incriminating statements.

Thereafter, the detectives notified the Cook County State's Attorney's office. Assistant State's Attorney Mark LeFevour arrived at the police station and, after reviewing various reports and interviewing witnesses, spoke to defendant in the presence of Detective Glynn. Defendant was again advised of his *Miranda* rights, which he waived. Defendant then gave an inculpatory statement to LeFevour.

On cross-examination, Detective Glynn stated that he had not known that defendant had been appointed counsel in the extradition proceeding, nor that defendant had had at least four or five court appearances with respect thereto prior to defendant's return to Chicago.

The record reflects that a grand jury, convened on December 5, 1988, returned indictments against defendant that charged him with murder and numerous related offenses regarding the 1984 Tolliver incident. The indictments were filed in the circuit court of Cook County

on January 6, 1989. Defendant was arraigned and appointed counsel to represent him with respect to these charges. Defendant's attorney filed a motion to suppress defendant's incriminating statements, arguing that they had been taken in violation of his sixth amendment right to counsel. Following a hearing, the trial court allowed defendant's motion to suppress. The State appeals. See 134 Ill. 2d R. 604(a)(1).

The defendant argues that his sixth amendment right to counsel with respect to the 1984 Tolliver murder had attached upon his return to Chicago in December 1988. Defendant asserts that his sixth amendment right to the assistance of an attorney had been triggered because: (1) a complaint for preliminary examination had been filed against him; (2) extradition proceedings had been instituted to effect his return to Chicago; and (3) his co-offender in the Tolliver murder, Vincent Wade, had been prosecuted and convicted for his involvement in the incident. See *People v. Wade* (1989), 185 Ill. App. 3d 898, 452 N.E.2d 58.

We conclude that these three circumstances, considered separately or cumulatively, did not trigger defendant's sixth amendment right to counsel. Moreover, even assuming *arguendo* that defendant's sixth amendment right to counsel had arisen by the time that he was questioned by authorities on December 13, 1988, regarding the 1984 Tolliver murder, we find that the defendant's admonition and waiver of *Miranda* warnings were sufficient to protect his sixth amendment right to counsel. Accordingly, we reverse and remand.

I

■■ The sixth amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to *** have the Assistance of Counsel for his defence." (U.S. Const., amend. VI.) This guarantee arises " 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " (*United States v. Gouveia* (1984), 467 U.S. 180, 188, 81 L. Ed. 2d 146, 154, 104 S. Ct. 2292, 2297, quoting *Kirby v. Illinois* (1972), 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417, 92 S. Ct. 1877, 1882 (plurality opinion).) By ensuring that a suspect is provided the right to assistance of an attorney upon the commencement of adversarial judicial proceedings, the sixth amendment protects the accused's interests when the government has committed itself to prosecute, because it is at this time that "the adverse positions of government and defendant have solidified [and] a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of

substantive and procedural criminal law." *Kirby*, 406 U.S. at 689, 32 L. Ed. 2d at 418, 92 S. Ct. at 1882.

■ Initially, we determine that the filing of a complaint for preliminary examination against defendant, in order to obtain a warrant for his arrest with respect to the 1984 Tolliver murder, did not trigger defendant's sixth amendment right to counsel. The Illinois Supreme Court has specifically held that the filing of a complaint for preliminary examination does not activate an accused's sixth amendment right to counsel, unless the record shows significant involvement by the prosecution in the filing of the complaint. (See *People v. Hayes* (1990), 139 Ill. 2d 89, 123-25, 564 N.E.2d 803; see also *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38; *People v. Wilson* (1987), 116 Ill. 2d 29, 506 N.E.2d 571; *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261.) In the case at bar, the record simply discloses that Detective Glynn filed a complaint for preliminary examination alleging that defendant had been involved in the 1984 Tolliver murder. There is nothing in the record to show significant prosecutorial involvement in the filing of this complaint. Consequently, we cannot say on this record that the filing of a complaint for preliminary examination gave rise to defendant's sixth amendment right to counsel.

Similarly, the circumstance that defendant was named as respondent in the California extradition proceeding in order to cause his return to Illinois did not, in and of itself, cause the attachment of the defendant's sixth amendment right to counsel. (See *People v. Young* (1990), 201 Ill. App. 3d 521, 531-33, 558 N.E.2d 1287, *appeal allowed* (1990), 135 Ill. 2d 565.) As the court noted in *Young*, "an extradition proceeding, unlike an arraignment, involves no inquiry into the guilt or innocence of an accused." (201 Ill. App. 3d at 533.) An extradition proceeding is not considered a criminal proceeding *per se*. (*Young*, 201 Ill. App. 3d at 533; see also *People v. Warner* (1986), 146 Ill. App. 3d 370, 496 N.E.2d 1010, *cert. denied* (1987), 480 U.S. 938, 94 L. Ed. 2d 776, 107 S. Ct. 1586.) In addition, extradition is not deemed a "critical stage" in judicial criminal proceedings. (*Young*, 201 Ill. App. 3d at 533, citing *United States ex rel. Calhoun v. Twomey* (7th Cir. 1971), 454 F.2d 326.) In light of these considerations, defendant's sixth amendment right to counsel was not activated by his extradition from California to Illinois. See also *State v. Falcon* (1985), 196 Conn. 557, 494 A.2d 1190; *Utt v. State* (1982), 293 Md. 271, 443 A.2d 582; *Wertheimer v. State* (Minn. 1972), 201 N.W.2d 383.

We also are not persuaded that the prosecution and conviction of defendant's co-offender, Vincent Wade, should have triggered defendant's sixth amendment right to counsel. Defendant claims that certain

critical State evidence admitted in the trial of his co-offender also implicated defendant. (See *Wade*, 185 Ill. App. 3d 898.) Defendant argues that because of this incriminating evidence, it is apparent that the State's Attorney could have sought defendant's indictment prior to his return to Chicago, and that consequently, the State intended to prosecute defendant upon his arrival in this State. However, the circumstance that the State's Attorney allegedly could have sought defendant's indictment upon his return to Chicago does not dictate the conclusion that the State had definitely committed itself to prosecuting the defendant when he was brought back to this jurisdiction. We conclude that, on this factor alone, the State had not "crossed the constitutionally-significant divide from fact-finder to adversary" (*United States ex rel. Hall v. Lane* (7th Cir. 1986), 804 F.2d 79, 82-83) upon defendant's arrival in Chicago on December 13, 1988. The prosecution and conviction of defendant's co-offender did not, in and of itself, give rise to a sixth amendment right to counsel in defendant's behalf.

In addition, we hold that the combination of factors upon which defendant relies was not sufficient to cause the attachment of his sixth amendment right to counsel upon his return for police questioning on December 13, 1988. The facts, as disclosed in the record before us, do not establish that the State's Attorney's office had committed itself to prosecuting defendant for the Tolliver murder when defendant was returned to Chicago in December 1988. In our view, the instant cause is factually similar to *People v. Nally* (1991), 216 Ill. App. 3d 742, 575 N.E.2d 1341. In *Nally*, the State's Attorney's office had been involved in presenting evidence to a grand jury for several months prior to defendant's arrest. During this time, the State's Attorney had also arranged for certain individuals to receive immunity from prosecution, and had prepared and filed documents to obtain eavesdrop authorization and a warrant for defendant's arrest. Based on these circumstances, the defendant argued that the level of prosecutorial involvement was sufficient to activate his sixth amendment right to an attorney. See *Nally*, 216 Ill. App. 3d at 761.

The appellate court in *Nally* rejected the defendant's argument, noting that he had not been indicted until approximately a week after he was arrested. The court also observed that under Illinois law, the State's Attorney is responsible for initiating applications for the authorization of the use of eavesdropping devices, as well as commencing the process for the granting of witness immunity. The court characterized these activities as legitimate and statutorily authorized prosecutorial functions. The court noted that "for every act that, ac-

cording to defendant, evidences excessive prosecutorial involvement, the police had a corresponding role" in obtaining the eavesdrop order and the warrant for the defendant's arrest. (*Nally*, 216 Ill. App. 3d at 765.) The court concluded that "it is clear that this was not a case where the prosecution simply ran the entire investigation to the exclusion of the police." *Nally*, 216 Ill. App. 3d at 765.

Similarly, in the instant cause, the record fails to disclose excessive or substantial prosecutorial involvement in the police investigation of defendant's responsibility for the 1984 Tolliver murder. According to the record, the State's Attorney in the case at bar questioned the defendant after he had given incriminating statements to Chicago police detectives following defendant's return on December 13, 1988. The record does not establish any prosecutorial involvement in obtaining a warrant for defendant's arrest, nor in causing his extradition from California to Chicago. Although the State's Attorney prosecuted defendant's co-offender, Vincent Wade, for the 1984 Tolliver murder, this was a legitimate prosecutorial function. (See Ill. Rev. Stat. 1987, ch. 34, par. 3—9005 (responsibility of State's Attorney to prosecute alleged criminal activity).) Given all of these considerations, we cannot conclude that defendant's sixth amendment right to counsel had arisen upon his return to Chicago on December 13, 1988, for police questioning regarding his involvement in the 1984 Tolliver murder. Accordingly, the trial court erred in its suppression of defendant's incriminating statements to authorities.

II

We also conclude that, assuming *arguendo* that defendant's sixth amendment right to counsel had arisen upon his questioning by authorities regarding the 1984 Tolliver murder on December 13, 1988, the defendant's admonition and waiver of *Miranda* rights were sufficient to preserve his sixth amendment right to counsel.

In this respect, we find the United States Supreme Court's decision in *Patterson v. Illinois* (1988), 487 U.S. 285, 101 L. Ed. 2d 261, 108 S. Ct. 2389, particularly instructive. In *Patterson*, the defendant was indicted for murder. Before he was arraigned on the charges, defendant was questioned by police officers, waived his rights under *Miranda*, and gave incriminating statements regarding his involvement in the incident. Thereafter, also prior to arraignment, the defendant gave additional inculpatory statements to an assistant State's Attorney.

The Supreme Court rejected the defendant's claim that because his sixth amendment right to an attorney was triggered by indict-

ment, the police were barred from questioning him with respect to the incident for which he had been indicted. In so ruling, the Court observed that the defendant had not previously sought to exercise his constitutional right to an attorney. The Court noted that an accused who has been indicted, but has not yet accepted counsel or invoked his right to an attorney, is in the same position as a "preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned." *Patterson*, 487 U.S. at 291, 101 L. Ed. 2d at 271, 108 S. Ct. at 2394.

The Court in *Patterson* reiterated the reasoning of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct 1880, that once an accused has requested counsel, no further police questioning is permissible unless the defendant himself initiates further communication with authorities. (*Patterson*, 487 U.S. at 291, 101 L. Ed. 2d at 271, 108 S. Ct. at 1880, quoting *Edwards*, 451 U.S. at 484-85, 68 L. Ed. 2d at 385-86, 101 S. Ct. at 1884-85.) According to the Court, the purpose of *Edwards* is to "[p]reserv[e] the integrity of an accused's choice to communicate with police only through counsel *** —not [bar] an accused from making an initial election as to whether he will face the State's officers during questioning with the aid of counsel, or go it alone." (Emphasis in original.) (*Patterson*, 487 U.S. at 291, 101 L. Ed. 2d at 271-72, 108 S. Ct. at 2394.) The Court determined that if a defendant "knowingly and intelligently" chooses to speak to authorities notwithstanding his right to counsel, "we see no reason why the uncounseled statements he then makes must be excluded at his trial." (*Patterson*, 487 U.S. at 291, 101 L. Ed. 2d at 272, 108 S. Ct. at 2394.) In addition, the Court determined that an accused who has been indicted, but not yet arraigned and appointed counsel, may be properly questioned by police authorities upon admonition and waiver of the defendant's *Miranda* rights. The Court reasoned that further admonitions to an indicted defendant were neither constitutionally required nor appropriate. *Patterson*, 487 U.S. at 292-300, 101 L. Ed. 2d at 272-77, 108 S. Ct. at 2394-99.

In light of this reasoning in *Patterson*, we conclude that defendant's admonition and waiver of his *Miranda* rights were sufficient protection of his sixth amendment right to an attorney, assuming *arguendo* that his sixth amendment right to counsel had arisen by the time he had been questioned by authorities on December 13, 1988, regarding the 1984 Tolliver murder. As in *Patterson*, the defendant in the instant cause had not previously invoked his constitutional right to an attorney. Assuming that his sixth amendment right to counsel had come into existence by the time he was questioned by authorities

upon his return on December 13, 1988, the defendant was in no different position than the indicted defendant in *Patterson*, *i.e.*, the defendant had not yet invoked or accepted his sixth amendment right to the assistance of an attorney. In these circumstances, the police officers' provision of defendant's *Miranda* rights, and his waiver thereof, were sufficient to protect defendant's sixth amendment right to counsel. Accordingly, the trial court erred in its allowance of defendant's motion to suppress the incriminating statements he made to authorities.

We note that the cases upon which defendant relies are factually distinguishable, as in each decision the defendant had accepted appointment of counsel at arraignment, and thereby invoked his sixth amendment right to an attorney prior to police questioning. See *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404; *People v. Kidd* (1989), 129 Ill. 2d 432, 544 N.E.2d 704; see also *People v. Fleming* (1985), 134 Ill. App. 3d 562, 480 N.E.2d 1221 (police continued interrogation in spite of defendant's request for attorney).

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.